*465
 
 Marshall, C. J.
 

 These two error proceedings, filed in this court as of right, involve the same or similar questions of constitutional law, and have therefore been argued together and will be disposed of in one opinion. Each was begun as a taxpayer’s suit, attacking the constitutionality of the Park District Act, General Code Sections 2976-1 to 2976-10c, inclusive (107 O. L., 65-69), and the amendments thereto, Sections 2976-1 and 2976-7, and the supplemental Sections 2976-10d to 2976-lOi (108 O. L., pt. 2, 1097-1100). Incidentally, the litigation in each instance involves questions of the lawful existence of the two metropolitan park boards organized under and pursuant to said statutes, in Cleveland and Akron, respectively.
 

 In cause No. 21324, here on error from the Court of Appeals of Summit county, that court had affirmed the judgment for the defendants pronounced in the court of common pleas upon the pleadings, which joined issue upon the constitutional objections alleged by the taxpayer against said statutes. In cause No. 21336, here on error from the Court of Appeals of Cuyahoga county, that court heard the case on appeal from the court of common pleas of that county and rendered judgment for the defendants, with separate findings of fact and conclusions of law. In each case, the prayer of the petition was that the officers of the district park boards be enjoined from incurring obligations requiring the expenditure of public funds, or from exercising any of the powers conferred upon them by said statutes, and, more especially, that they be enjoined from levying any taxes upon property within the respective'park districts, on the ground that all such statutes were unconstitutional and void.
 

 
 *466
 
 Section 2976-1, as amended, provides for park districts for the conservation of the natural resources of the state, and further provides that such districts may include all, or a part only, of the territory within a county, if existing townships or municipalities are not divided.
 

 Section 2976-2 provides that application may be made to the probate judge to create a park district, which application shall state the name of the district, contain accurate descriptions of the territory to be included, and be accompanied with an accurate map or plat.
 

 Section 2976-3 provides for notice of the time of hearing such application.
 

 Section 2976-4 provides for the hearing and taking evidence, as in other civil cases in said court, and provides that, if the judge finds that the creation of such district will be conducive to the general welfare, he shall enter an order creating the district under the name specified in the application.
 

 Section 2976-5 provides that upon creation of such district the probate, judge shall appoint three commissioners, who shall take oath and give bond, and who shall serve without compensation, except the allowance of actual and necessary expenses.
 

 Section 2976-6 provides that such board shall.be a body politic and corporate and shall be capable of suing and being sued.
 

 Section 2976-7 confers upon such board power to acquire “lands either within "or without such district for conversion into forest reserves and for the conservation of the natural resources of the state, including streams, lakes, submerged and swamp lands, and to those ends may create parks, park
 
 *467
 
 ways, forest reservations and other reservations and afforest, develop, improve and protect the same in such manner as they may deem conducive to the general welfare. Such lands may be acquired by such board, on behalf of said district, by gift or devise, by purchase, or by appropriation.”
 

 Section 2976-8 authorizes such park board to take control of any municipal park or park lands within the district by agreement with the authorities con- ' trolling the same.
 

 Section 2976-9 provides: “In the development and improvement of the lands acquired by the board, such board may assess such portion of the cost of such development or improvement as it may deem equitable, not, however, in excess of fifty per cent of such total cost,, upon abutting, contiguous, adjacent or otherwise specially benefited lands, in an amount not in excess of and in proportion to the special benefits conferred upon such lands by such development or improvement. Such assessments shall be payable in not to exceed ten equal annual installments, and said board may borrow money in anticipation of the collection of such special assessments, and the proceedings had in the levying and collection of such special assessments, including the issue of bonds of such district in anticipation of the collection of deferred assessments, shall be as provided in case of the levy and assessment of special assessments for street improvements in municipalities, in so far as such proceedings shall be applicable.”
 

 Section 2976-10 provides: ‘ ‘ Such board shall have power to levy taxes upon all the taxable property within such district in an amount not in excess of
 
 *468
 
 one-tenth of one mill upon each dollar of the assessed value of the property in the district in any one year, subject, however, to the combined maximum levy for all purposes otherwise provided by law. After the budget commission of the county in which said district is located shall certify such levy, or such modification thereof as they deem advisable to the county auditor, it shall be by him placed upon the tax duplicate, and the board may then borrow money in anticipation of the collection of such tax, and issue the negotiable notes of such board therefor in an amount not in excess of seventy-five per cent, of the proceeds of such tax, based upon the amount of the current tax duplicate. Such notes shall not be issued for a period longer than one year, and shall be payable out of the proceeds of such levy, and to the extent of such notes and the interest which may accrue thereon, such levy shall be exclusively appropriated to the payment of such notes, and shall be used for no other purpose whatsoever. Any portion of such notes remaining unpaid through any deficiency in such levy, shall be payable out of the next ensuing levy which shall be made by said board in the next ensuing year in an amount at least sufficient to provide for the payment of said notes, not, however, in excess of one-tenth of one 10111.” '
 

 Section 2976-10a provides for the disposition of records, surveys, and other property, including treasury balances required by laws superseded by these acts.
 

 Section 2976-10b provides for the custody, accounting, depositing, and disbursement of park board funds, and requires the auditor’s certificate
 
 *469
 
 of money in hand to provide for contracts before becoming effective.
 

 Section 2976-10c provides for removal of commissioners at the discretion of the probate judge, either upon complaint filed or upon his own motion, and for the appointment of successors.
 

 Section 2976-10d provides for annexation to a park district of territory adjacent and contiguous thereto, whether located within or without the county wherein such district was created.
 

 Section 2976-10e provides, in case of annexation to a park district of territory located in a county other than a county in which such district was created, the budget commissioners of the county in which such annexed territory is located shall exercise, with reference to such annexed territory, the powers conferred upon budget commissioners by Section 2976-10, and the auditor and' treasurer of the county in which such annexed territory is located shall exercise, with reference to taxes levied and collected by the park board upon such annexed territory, the powers conferred upon auditors and treasurers by Section 2976-10b.
 

 Section 2976-10f provides that park boards may sell lands on approval by the probate judge.
 

 Section 2976-10g gives to such boards power to adopt by-laws, rules, and regulations, and further provides that the violation of any such by-laws, rules, and regulations shall constitute a misdemeanor punishable by fines.
 

 Section 2976-10h provides that such employes of the board as may be designated for that purpose shall have and exercise the powers of police officers within and adjacent to the lands under the jurisdiction and control of the board.
 

 
 *470
 
 Section 2976-lOi provides: “Upon or before the first day of September in any year the board of park commissioners, by resolution, may submit to the electors of the district the question of levying taxes for the use of the district. Such resolution shall declare the necessity of levying such taxes, shall specify the purpose for which such taxes shall be used, the annual rate proposed, and the number of consecutive years such rate shall be levied; and such resolution shall be forthwith certified to the board of deputy state supervisors and inspectors of elections in each county in which any part of such district is located, and the question of the levy of taxes as provided in such resolution shall be submitted to the electors of the district at the next ensuing general election. The ballot shall set forth the purpose for which said taxes shall be levied, the annual rate of levy, and the number of years of such levy. If a majority of the electors voting upon the question of such levy shall vote in favor thereof, such taxes shall be levied and shall be in addition to the taxes authorized by Section 2976-10 of the General Code, and all other taxes authorized by law; provided that the rate submitted to the electors at any one time shall not exceed one-tenth of one mill annually upon each dollar of valuation. When a tax levy shall have been authorized as herein provided, the board of park commissioners may issue bonds in anticipation of the collection of such levy, provided that such bonds shall be issued only for the purpose of acquiring and improving lands; and such levy, when collected, shall be applied in payment of the bonds so issued and the interest thereon; provided further that the amount of bonds so issued
 
 *471
 
 and outstanding at any time shall not exceed one per cent of the total tax valuation in such district. Such bonds shall bear interest at a rate not to exceed six per cent per annum, shall be signed by a majority of the members of such park board, and shall be sold in the manner specified by law for the sale of municipal bonds, except that before advertising such bonds for sale at public sale, it shall be necessary only to offer said bonds for sale to the Industrial Commission of Ohio as provided by law.”
 

 While the petitions attack the constitutionality of Sections 2976-10g and 2976-10h, we shall give no consideration to those sections, because it does not appear that either of the boards involved in these error proceedings has ever attempted to enact by-laws, rules, and regulations, or to constitute any of their employees police officers, or to prosecute violators of said by-laws, rules, and regulations. The provisions particularly challenged and to which we shall direct our attention are Sections 2976-4, 2976-5, 2976-9, 2976-10, 2976-10c, 2976-10e, and 2976-10i.
 

 There can be no question of the power of the General Assembly to establish park districts and boards of park commissioners, and to define their powers. No one would question the right of the General Assembly to levy a state tax to establish and maintain state parks and reserves, and to appoint commissioners to care for them. This right has freely been exercised in the past. These are institutions in which all the people of the state are presumably interested and by which they are benefited. Cities have freely exercised these rights, and the state has likewise, though rather sparingly, exercised them. District parks and boards of park commissioners
 
 *472
 
 are institutions which, differ from state institutions only in the range of the interest and benefit. By the legislation now under consideration provision has been made for park districts, whose benefits are more general than those of the.cities and more local than those of the "state. The power of the General Assembly to establish any of them is no longer doubted. This proceeding does not question the power of the Legislature to establish park districts. The attack is upon the methods by which they are established, and by which park boards are created, and upon the powers conferred on them. The case of
 
 McNab
 
 v.
 
 Board of Park Commrs. of Metropolitan Park Dist. in Cleveland,
 
 108 Ohio St., 497, 141 N. E., 332, held that the statutes under which the Cleveland Park Board was established were enacted under the broad legislative power conferred upon the General Assembly and'in the exercise of the state’s general police power, and the only consideration given in that case to Section 36 of Article II of the Constitution, (the amendment of 1912), was to declare that that amendment did not operate as a limitation upon general legislative power. The discussion of the state’s police power in the opinion in that case need not be further elaborated here. While the syllabus in that case was a sweeping declaration of the constitutionality of the statutes which are challenged in the instant case, it is proper to state that a different angle of attack is here made.
 

 This proceeding challenges the constitutionality of the various statutes because of alleged delegation of legislative powers to executive bodies, and alleged delegation of political and executive powers to judicial bodies. The first challenge we shall notice
 
 *473
 
 is directed to the power conferred upon the probate judge to appoint park commissioners and to exercise the functions of molding the confines of the area affected and erecting the same into a park district. It is alleged that the appointing power is an executive function, and the establishment of the confines of the district a legislative function, and that both are nonjudicial.
 

 The Constitution of Ohio has delegated to the General Assembly the legislative authority of this state. This authority is only subject to the express limitations found in the Constitution itself and the implied limitation that it must fall within the scope of legislative authority, as distinguished from judicial and executive authority conferred upon other departments. Except for the provisions relating to the initiative and referendum, all legislative authority of the state must be exercised by the General Assembly alone.
 

 The essential principle underlying the policy of the division of powers of government into three departments is that powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments, and further that none of them ought to possess directly or indirectly an overruling influence over the others. It was declared by Madison before the adoption of the United States Constitution: “The accumulation of all powers, legislative, executive, and judicial, in the same hands, whether of one, a few or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny. ’ ’ To provide a practical security for each against the invasion of thé
 
 *474
 
 others was felt by the early founders of our government to be a most important, as well as a most difficult, task. The State Constitutions of many of the states, adopted immediately after the federal Constitution went into effect, declared in strong terms that the powers of government ought to be forever separate and distinct from each other, and yet not one of them faithfully observed its own solemn injunctions, but made provision for certain powers to be exercised by departments other than those to which they properly belonged. Other states, including Ohio, and the federal government, made no such declaration, and while the powers have in fact been assigned to the three departments, no barriers have been provided between them, and no injunction declared against invasions or surrenders.
 

 Our own Constitution contains many instances of conferring powers upon departments foreign to their true classification. The Constitution of 1802 provided for judges to be chosen by the Legislature. Our present Constitution gives to the Governor the veto power. The Lieutenant Governor presides over the Senate. The House of Representatives has the sole power of impeachment, and impeachments must be tried by the Senate. The Governor may convene the General Assembly in extraordinary session and limit the deliberations of such session. In case of disagreement between the two houses, he may adjourn them. The executive prerogative of pardon is in cases of treason reserved to the General Assembly. These major instances, and others of a minor nature which might be mentioned, illustrate and demonstrate the mixture of powers which is not only tolerated, but expressly authorized. It
 
 *475
 
 was the purpose of the founders of our federal and state Constitutions to so balance the division of powers that each department would possess the constitutional means of resisting encroachments of the others, and, at the same time, to so divide and arrange the offices that each might be a check on the others.
 

 In the instant case it is not complained that one department is attempting an invasion of the prerogative of another, but that the Legislature is voluntarily surrendering a part of its prerogative to the judiciary, and conferring both legislative and executive powers upon the judicial branch. It cannot be doubted that the Legislature may define the jurisdiction of the probate court; nor is it claimed that it may not. This is placed beyond argument by the clear language of Section 8 of Article IV of the Constitution. It is claimed, however, that the probate court is clothed with authority to determine the extent of the territory to be created into a park district and that this is a purely political question. Sections 2976-2 to 2976-5, inclusive, define the powers and procedure of the court. Application must be made, notice given, and a hearing had. Section 2976-4 provides:
 

 “At such hearing evidence may be taken as in other civil cases in said court, and the judge shall hear all arguments for and against the creation of such district. If he shall find that such application is signed, or authorized, as herein provided, and that the creation of such district will be conducive to the general welfare, he shall enter an order creating the district under the name specified in the application.”
 

 
 *476
 
 It is manifest, therefore, that the function of the court is in every sense judicial. It involves fact finding, and application of statutory principles and policies to the facts found. It is true that the policy of establishing parks and conserving natural resources is a purely political and therefore a legislative matter, but the question of existence of natural resources in any proposed district, and the further question of reasonable relation of proposed parks and natural resources to .the general welfare, are justiciable matters.
 

 It is further asserted that Section 2976-5, conferring upon the probate court power to appoint the commissioners, is unconstitutional because it confers an executive function upon the court. We have already seen that the Constitution places no barrier between the departments and there is no definite limitation of . the general legislative authority which forbids giving to courts the power of appointment. On the other hand, there is very definite delegation of express power in that behalf. Section 27 of Article II provides:
 

 “The election and appointment of all officers, and the filling of all vacancies, not otherwise provided for by this Constitution, or the Constitution of the United States, shall be made in such manner as may be directed by law * * *.”
 

 The office of park commissioner is, of course, not provided for by the Constitution, and therefore becomes subject to legislative action. The Legislature has acted pursuant to this authority many times. The appointing power has been conferred upon the court of common pleas in the following instances.: Sections 5868 and 5869, to appoint and license
 
 *477
 
 auctioneers and to determine the amount of the license, not in excess of $500; Section 2976-11, to appoint county library trustees; Section 2710, to appoint examiners of the county treasury; Section 5947, to license ferries; Section 2333, to appoint county building commissions; Section 15098, as amended 109 Ohio Laws, 354, to appoint trustees of the Cincinnati Southern Railway; by the Conservancy Act (104 Ohio Laws, 13; Section 6828-8, General Code), to appoint directors of conservancy districts.
 

 The power of appointment has been conferred upon the probate courts in the following instances : Section 2971, to appoint a,board of county visitors; Section 2397, to appoint, in conjunction with the county auditor and county recorder, a county commissioner; Section 2579, to examine as to grounds of removal of the county auditor.; Section 2714, in conjunction with county treasurer and county auditor, to determine the necessity for a night watchman for the treasury and to fix his compensation; Section 1662, to appoint probation officers; Section 2348, to participate in the approval of plans for a courthouse or jail; Section 1713, to add one or more justices of the peace to any township.
 

 If this court should hold at this time that the probate court does not have power to make appointments, and that the Legislature has no authority to confer such power upon the probate court, we would by the same token hold all of these statutes to be unconstitutional and void. We have no difficulty declaring that, by virtue of Section 27 of Article II of the Constitution, the Legislature has authority to confer the appointing power upon courts, the juris
 
 *478
 
 diction of which is under the authority and control of the Legislature, and this, of course, includes probate and common pleas courts.
 

 The second challenge we shall notice is directed to the power conferred upon the board of park commissioners to levy taxes upon the taxable property within the district, not exceeding one-tenth of a mill in any one year. It is claimed that this is an attempted delegation of legislative power, vested exclusively, by Section 1 of Article II of the Constitution, in the General Assembly. It is a maxim in constitutional law that power conferred by a Constitution upon a Legislature to make laws cannot be delegated by such body to any other body or authority, unless the authority to so delegate is given by the Constitution itself, either expressly or by implication. The legislative prerogative is one which involves judgment, wisdom, and discretion of a high order, and the trust thus imposed cannot be shifted to other shoulders; neither can the judgment and discretion of any other body be substituted for that of the Legislature itself.
 

 This principle is well settled and is no longer the subject of controversy. Its application is one of the greatest difficulty in certain classes of cases, more especially in legislation involving the exercise of the police power.
 

 In the complexity of our advancing civilization, in the wide differences in conditions in different localities in the same state, and in the ever-changing conditions in a given locality, the Legislature has found it necessary to content itself with declaring the principles governing a general public purpose, and to confer upon existing local officials, or upon
 
 *479
 
 local boards to be created in a designated manner, the authority to provide, within definite limitations, rules and regulations to execute the general purpose expressed in the law itself. It does not argue against the completeness of the law that a given locality or district may or may not at its option avail itself of the provisions of the law. Statutes are sometimes peremptory and mandatory, and sometimes optional and permissive. One locality may have no need of governmental activity along a given line, while another locality in the same state may have an urgent need. That need must be ascertained and declared by means and methods prescribed by the law itself, which must be scrupulously followed. While the Legislature may not delegate to any other power the right to declare principles and standards, or general public policy, it may delegate to other competent agencies the power to determine whether or not they will avail themselves of the privileges conferred, and also delegate to certain named executive or administrative agencies authority involving discretion in relation to the execution of the law.
 

 The Legislature having declared the governmental policy, and having fixed the legal principles which are to govern, an administrative agency may be given power to ascertain the facts and conditions to which the policies and principles apply.
 

 The creation of boards and commissions has become a familiar means in recent periods to perform the executive functions which are essential to the. administration of laws. Parks and reservoirs for conservation of natural resources are for the public welfare, and the general policy of creating them,
 
 *480
 
 and the methods of doing so, are subject-matters of legislation. It is axiomatic that they cannot be created or maintained without the expenditure of money. Not being in that class or character of public improvement where assessments can be made upon property in the vicinity by reason of special benefits, that method of providing funds is not available. Manifestly a levy of taxes upon all the property in the state cannot be made to create and maintain a district park. It is inevitable, therefore, that a district levy must be made, and the Legislature has in fact authorized district park boards to impose a levy not in excess of one-tenth of one mill upon the assessed value of all taxable property in the district, subject to the maximum levy for all purposes provided by law.
 

 Applying the principles already declared, the Legislature has determined the general policy and defined the methods by which local needs can be determined by orderly processes. As 'a part of such methods and processes it has conferred upon the district board the power to determine the financial needs of the district and to make levies of taxes to meet them; We are concerned with the constitutionality of the power thus delegated.
 

 The power of the state to levy and collect taxes for public purposes is indispensable to orderly government, and is inherent in sovereignty. No government could discharge its functions without funds, and funds can only be raised by the imposition of taxes; The exercise of the power of imposing and collecting taxes is legislative, and yet this power is not expressly conferred by our Constitution upon the General Assembly. It is, however,
 
 *481
 
 necessarily included in the legislative authority conferred upon the General Assembly by Section 1 of Article II of the Constitution. Except for other express and implied provisions in the Constitution, the power of taxation would be vested in the Legislature alone, and without interference on the part of other governmental agencies. When these express and implied powers have been ascertained, the problems of the instant case will have been solved. The following provisions of the Constitution are pertinent to the inquiry:
 

 Article VI, Section 2: “The General Assembly shall make such provisions • by taxation, or otherwise, as, with the income arising from the school trust fund, will secure a thorough and efficient sys-’ tern of common schools throughout the state.”
 

 Article X, Section 7: “ The commissioners of counties, the trustees of townships, and similar boards, shall have such power of local taxation, for police purposes, as may be prescribed by law.”
 

 Article XII, Section 5: “No tax shall be levied, except in pursuance of law; and every law imposing a tax, shall state, distinctly, the object of the same, to which only, it shall be applied.”
 

 Article XIII, Section 6: “The General Assembly shall provide for the organization of cities, and incorporated villages, by general laws, and restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent the abuse of such power.”
 

 Cities and villages in Ohio have in fact been organized under general laws, anid the Legislature has in fact enacted statutes relative to the levy and collection of taxes by municipal corporations, which
 
 *482
 
 provisions are found in Sections 5625-3 and 3785, General Code. In harmony with the provisions of Section 6 of Article XIII of the Constitution, the provisions of the statute are in the nature of restrictions, thereby carrying out the constitutional mandate. By the provisions of Section 2 of Article VI of the Constitution the General Assembly was required to establish a thorough and efficient system of common schools throughout the state, and again there was the necessary implication that those local agencies in charge of the schools should have the power to impose and collect taxes. Counties and townships had been established as political subdivisions long before the adoption of the Constitution of 1851, and the same political necessity required the adoption of Section 7 of Article X, giving power of local taxation for police purposes to such subdivisions, but nevertheless requiring that such power should be only such “as may be prescribed by law.”
 

 All of these governmental agencies being local in their nature, it would have been impracticable, not to say impossible, for the General Assembly to have determined the amounts necessary to be provided by taxation; but, aside from that fact, the general policy of local control of local institutions has been a settled one in the genius of American government from its very foundation. The power of taxation is therefore a sovereign power and a legislative power, but the exercise of that power calls for certain administrative functions as indispensable to a wise and economical administration of public affairs. It is therefore the province of the General Assembly to determine the general governmental policy and the maximum of the extent of the imposition and col
 
 *483
 
 lection of taxes for all purposes in the state; but it is the province of the local subdivisions to determine their local needs, and to distribute the parts composing that maximum among the several institutions to be created and maintained. All of these principles have been well settled, and, while numerous authorities might be cited in their support, it is only necessary to refer to a few leading cases:
 
 Hill
 
 v.
 
 Higdon,
 
 5 Ohio St., 243, 250, 67 Am. Dec., 289;
 
 Western Union Tel. Co.
 
 v.
 
 Mayer, Treas.,
 
 28 Ohio St., 521, 533;
 
 City of Cincinnati
 
 v.
 
 Boettinger,
 
 105 Ohio St., 145, 154, 137 N. E., 6.
 

 If park districts fell clearly within the political subdivisions referred to in the Constitution, the foregoing principles would be decisive of this controversy. It is claimed, however, by relators, that several differences distinguish them. It is claimed that, by reason of the fact that in all those political subdivisions particularly referred to in the Constitution public officers are elected by vote of the people, it necessarily follows that taxes can only be levied by local authorities where the local officials are elected by the vote of the people. We are not, however, able to find any provision in the Constitution which limits the power to levy taxes to elected officials, as distinguished from those who are appointed to office. We are unable to find that the Constitution makes any distinction between officers elected and officers appointed, so far as the powers to be conferred upon them are concerned. The Constitution does provide, in Sections 2 and 4 of Article X, that all township and county officers must be elected, but Section 27 of Article II provides that all officers not provided for by the Constitution may
 
 *484
 
 be either elected or appointed, as the Legislature may direct. Taxes could only be imposed and collected for the use of townships and counties by officers who are elected by the people, for the simple reason that townships and counties can only choose their officials by election. It does not follow that, if any other political subdivisions are created in a lawful way, the officers who would govern such political subdivisions might not hold their offices by appointment, under the provisions of Section 27 of Article II. Neither does it follow that such officers could not be charged with the duty and responsibility of levying the taxes necessary to carry on the .functions of such subdivisions.
 

 To reach this conclusion it is not necessary to resort to implication. In the same section which makes provision for the power of local taxation for townships and counties, we find that that power has been conferred upon “similar boards;” that is to say, boards which are similar as governmental agencies to trustees of townships and commissioners of counties. They would necessarily not be boards which would have their territorial jurisdiction identical with a township or a county, because this would necessarily constitute them either township or county officers. In such event, it would have been necessary that they be elected by a vote of the people, and there would be no problem to be solved. The Constitution framers must have had' some particular agency in mind, and we can conceive of no agencies, which would have been pertinent to the language used except boards which would have jurisdiction over some territorial district not identical with a township or a county.
 

 
 *485
 
 Adopting this view of the matter, we are not without abundant authority to support the conclusions we have reached.
 

 Park boards are strictly creatures of legislation. But this fact does not distinguish them from townships and counties, which are likewise creatures of, legislation. It was clearly and emphatically so stated by Judge Ranney in
 
 Cincinnati, W. & Z. Rd. Co.
 
 v.
 
 Commrs. of Clinton County,
 
 1 Ohio St., 77, at page 89 of the opinion:
 

 “But what is a county? It is not
 
 imperium in imperio,
 
 in any sense. It is invested, as such, with no single attribute of sovereignty; and for reasons already stated, it cannot be. Rightly considered, it is a mere instrumentality, a means in the hands of the legislative power to accomplish its lawful purposes; and to this extent, a creature in the hands of its creator, subject to' be molded and fashioned as the ever varying exigencies of the state may require.”
 

 Much more appears in that opinion of the same tenor. This language, coming as it does from Judge Ranney, who was the leading figure in the constitutional convention of 1851, becomes authority of unusual force. In the same opinion he quotes with approval from
 
 Rice
 
 v.
 
 Foster,
 
 4 Har. (Del.), 479, 495, as follows:
 

 “Legislative power is the power of making laws. The making of a law, prescribing by what persons, or by what body, when, and in what manner taxes should be laid and collected, is the exercise of a legislative power. But the making of a resolution, or order, or the determination- or direction by the persons or body appointed for such purpose by
 
 *486
 
 the law, that taxes shall be laid and collected, is simply the execution of an authority granted by statute.”'
 

 In the same opinion he quotes with approval from
 
 Parker
 
 v.
 
 Commonwealth,
 
 6 Pa., 507, 47 Am. Dec., 480:
 

 “A
 
 law designating the persons, or bodies of persons, by whom a tax may be imposed, and the mode in which it shall be collected and distributed,' requires the authority of the constitutional law maker, for it is a rule of action prescribed. But the act of the designated persons or bodies, depends, for its authority, altogether upon the law commanding or permitting it.”
 

 Surely the Legislature has the same power to create districts as it has to create townships and counties. Judge Ranney’s definition of a county has no point of difference as an instrumentality of government from the districts created by the acts now under consideration. We could not uphold the contentions of the relators in these cases without doing violence to the principle declared by this court in
 
 Miami County
 
 v.
 
 City of Dayton,
 
 92 Ohio St., 215, 110 N. E., 726.
 

 It is true that the Conservancy Act has many essential differences from the Park District Act, and it is true that under the Conservancy Act provision is made for assessments upon lands in the vicinity to defray the cost of the improvement, and it is true that in that case the court treated all levies of taxes as special assessments. The Conservancy Act does make provision for special assessments and it seems to us that it has also clearly made provision for levy of general taxes without regard to special
 
 *487
 
 benefits. Section 43 of the act (Section 6828-43, General Code), contains the following provision:
 

 “As soon as any district shall have been organized under this act, and a board of directors shall have been appointed and qualified, such board of directors shall have the power and authority to levy upon the property of the district not to exceed three-tenths of a mill on the assessed valuation thereof as a level rate to be used for the purpose of paying expenses of organization, for surveys and plans, and for other incidental expenses which may be necessary up to the time money is received from the sale of bonds or otherwise.”
 

 The “assessed valuation thereof” must necessarily refer to the value of property assessed for purposes of general taxation, and cannot possibly refer to the “appraisal of benefits” referred to in other portions of the act. We agree with the conclusions reached by the court in that case, but in order to do so do not find it necessary to make any distinction between the power to levy general taxes and the power to levy special assessments. The Miami conservancy case was before this court a number of times, and every feature of the Conservancy Act was brought in question in those various proceedings, and all were found to be valid and constitutional. The same principle must necessarily apply to the Park Board Act, and those principles which have become a rule of property in conservancy cases cannot upon any equitable principle be denied application to cases arising under the Park Board Act.
 

 In
 
 State, ex rel. Village of Cuyahoga Heights,
 
 v.
 
 Zangerle,
 
 103 Ohio St., 566, 134 N. E., 686, this court
 
 *488
 
 had under consideration the Health District Law, 108 Ohio Laws, pt. 2, 1085 (Section 1261-16
 
 et seq.,
 
 General Code). That law provided for local health districts and general health districts. The general health district was not identical in territory with any other political subdivision of the state. The law did not definitely provide for a levy of taxes to carry on the health activities of the district, but it did provide in Section 1261-40 that the board of health of a general health district should estimate the amounts needed for the current expenses of the district and submit the same to the budget commissioners, and further provided: “The aggregate amount as fixed by the budget commissioners shall be apportioned by the county auditor among the townships and municipalities composing the health district on the basis of taxable valuations in such townships and municipalities.” The section further provided that the required amount should be withheld by the several auditors of the counties of the district, and the results were therefore the same as though the tax had been directly levied by the board, the auditor having no alternative except to withhold the amount requested and place the same in the “district health fund.”
 

 In
 
 State, ex rel. Fritz,
 
 v.
 
 Gongwer,
 
 114 Ohio St., 642, 151 N. E., 752, this court had under consideration the District Ditch Law. (Sections 6536 to 6542, inclusive, General Code.) That law did not permit of a levy of general taxes, but made provision for special assessments. The assessments were made by elective officers, viz., the commissioners of the counties, the whole or parts of which composed the taxing district. It was held in that case that the law
 
 *489
 
 was constitutional, and it was particularly stated that the county commissioners, while acting under that law, were not acting as county commissioners, but as officers of the entire territory composing the taxing district. While no provision was made in that law for a direct levy of general taxes, it did permit the pledging of the faith and credit of the special taxing district as security for bonds to be issued, and it necessarily follows that, if there were at any time default in any bond issued by any such district, and a liability thereon which could not be met by the special assessments, the residue would have to be met by a general levy of taxes on all of the property within the district. That decision is therefore authority for the doctrine that a levy of general taxes may be made by district officers who hold their offices
 
 ex officio,
 
 and therefore by appointment.
 

 Counsel for relators interpret the
 
 Miami
 
 and
 
 Gongwer cases
 
 as giving to appointive officers only the power to levy special assessments. Even if we should adopt that limited interpretation of those cases, they would still be authority for the proposition that appointive officers might be empowered to levy general taxes, because we find nothing in the Constitution which places special assessments upon a different basis from general taxes. The Constitution provided that certain officials must be elected by vote of the people, and then'provides that other officers than those named may be either elected or appointed. It does not follow that the duties and responsibilities of the one are less important than those of the other. The case of
 
 Cline
 
 v.
 
 Martin,
 
 94 Ohio St., 420, 115 N. E., 37, has many points in common with the instant controversy. That case was
 
 *490
 
 heard at a time when the members of the county school board were appointive. At that time the provisions for obtaining funds to carry on the work of the county board were much the same as the provisions of the general district health law, which has already been adverted to.
 

 State, ex rel. Atty. Gen., v. Covington,
 
 29 Ohio St., 102;
 
 State
 
 v.
 
 Baughman,
 
 38 Ohio St., 455, and
 
 State, ex rel. Herron,
 
 v.
 
 Smith,
 
 44 Ohio St., 348, 7 N. E., 447, 12 N. E., 829, each and all present analogies to the instant case, as showing the exercise of the functions of levying taxes by persons and boards holding office by appointment and the approval of such exercise by this court. It is true that in all of those cases counsel did not argue the points which have been so strongly presented in the instant case, but upon thorough inquiry into the subject we are of the opinion that the Constitution has fully authorized the Legislature to create districts, as separate political subdivisions, and to create boards to.exercise the governmental activities of the district, and to utilize such boards as fact-finding agencies, and to determine the financial needs of such districts, and to impose and collect taxes to defray the same.
 

 A minority of the members of this court finds no conflict in the District Park Board Act with any of the provisions of the Constitution. The act was held to be valid and constitutional by the Court of Appeals, and a minority of this court is therefore under the necessity of affirming that judgment, since the Constitution requires the concurrence of all but one of the judges of this court to hold it to be unconstitutional. The judgment in each case is affirmed.
 

 Judgments affirmed.
 

 Kinkade, J., concurs.