This matter is before the court on the petition for writ of habeas corpus of petitioner, Milton Woods, filed on March 18, 1999. A hearing on the petition was held on April 6, 1999. At the hearing, John Kinkela, Chief of the Adult Parole Authority, testified as a court witness. Thereafter, post-hearing briefs were submitted by petitioner and respondent, James A. Telb, and respondents, Eddie Hopkins and Ohio Adult Parole Authority (collectively referred to as "APA"). Petitioner contends that his confinement for post-release control violations offends various constitutional provisions, including his right to due process, cruel and unusual punishment, separation of powers, liberty and unlawful restraint.
The facts relevant to the petition are as follows. On September 13, 1996, petitioner appeared before the Lucas County Court of Common Pleas and entered a plea of guilty to theft in violation of R.C. 2913.02(A), a fifth degree felony. Thereafter, petitioner executed a plea form, which set forth a maximum prison sentence of twelve months. Pursuant to R.C. 2967.28(F)(3), the plea form further provided:
 "If I violate the conditions of supervision while under post-release control, the parole board could return me to prison for up to nine months for each violation, for a total of 50% of my originally stated term. If the violation is a new felony I could receive a new prison term of the greater of one year or the time remaining on post release control."
On September 25, 1996, petitioner was sentenced to ten months of incarceration. The trial court's judgment entry provided, in part:
 "After prison release, if post-release control is imposed, for violations of post-release control conditions, the adult parole authority or parole board may impose a more restrictive or longer control sanction, return defendant to prison up to nine months for each violation, up to a maximum of 50% of the stated term."
Petitioner served the full ten-month prison term. He was then placed on three years of post-release control under the supervision of the APA and pursuant to R.C. 2967.28(C) and (D). R.C. 2967.28(C) provides in pertinent part:
 "Any sentence to a prison term for a felony of the third, fourth, or fifth degree that is not subject to division (B)(1) or (3) of this section shall include a requirement that the offender be subject to a period of post-release control of up to three years after the offender's release from imprisonment, if the parole board, in accordance with division (D) of this section, determines that a period of post-release control is necessary for that offender."
Division D sets forth the factors the APA shall consider in determining whether to impose a period of post-release control and, if so, what conditions are appropriate. Such factors include: criminal history, juvenile delinquency adjudications, conduct during imprisonment, and recommendations by the office of victims' services. If a releasee violated the conditions of post-release control, the APA must consider which post-release control sanction or combination of sanctions is reasonable under the circumstances.
A post-release control violator may be subjected to a variety of sanctions administered by the APA. Such sanctions include,inter alia, increasing the period of post-release control, placement in a county jail for up to six months, placement in a halfway house, alternative residential placement, and new prison term of up to half the stated prison term not exceeding nine months. R.C. 2967.28(A)(2) and (F)(3). If a prison term sanction is imposed, the period of post-release control remaining is tolled during the time the releasee is imprisoned. R.C. 2967.28(F)(3). The period is not tolled when other sanctions, including incarceration in the county jail, are imposed.
In the instant case, petitioner's three year period of post-release control commenced upon his June 17, 1997 release from prison. The conditions of his post-release control included attending a substance abuse program, submitting to weekly urinalysis, and reporting for office visits on the second Tuesday of each month. Petitioner first violated the terms of post-release control in July 1997, and, between periods of compliance, committed several additional violations through March 1999.
The APA imposed various sanctions on petitioner for his violations. From August 26, 1997 through December 17, 1997, petitioner was ordered to reside at the Volunteers of America ("VOA"), a halfway house and complete a drug abuse program. On March 30, 1998, petitioner was returned to prison for one hundred fifty-one days, or half of his original sentence. Petitioner was arrested on January 16, 1999, for drug abuse and pursuant to an APA warrant charging him with escape. On the drug abuse charge petitioner was sentenced to one hundred eighty days at the Corrections Center of Northwest Ohio ("CCNO"). He was mistakenly released on March 9; however, on March 10, he voluntarily turned himself over to his parole officer based upon the escape charge. Petitioner was sent to the Lucas County Jail for thirty days and was ordered by the APA to be returned to the VOA. However, this court released petitioner on April 6, 1999, subject to the authority of the APA, pending the outcome of this habeas corpus petition.
We begin our analysis with the strong presumption that lawfully enacted legislation is constitutional. Arnold v.Cleveland (1993), 67 Ohio St.3d 35, 38. "However, this does not mean that we may turn a deaf ear to any challenge to laws passed by the General Assembly. The presumption that laws are constitutional is rebuttable." Derolph v. State_ (1997) 78 Ohio St.3d 193,198, citing Adamsky v. Buckeye Local School Dist.
(1995), 73 Ohio St.3d 360, 361.
The court shall first address petitioner's argument that the General Assembly's delegation of power to the Ohio Adult Parole Authority, pursuant to R.C. 2967.28(D)(1), violates the doctrine of separation of powers by usurping judicial authority. Specifically, petitioner argues that the separation of powers is violated by the General Assembly's delegation to the APA the power to determine: (1) whether to impose a period of post-release control for fourth and fifth degree felonies and certain third degree felonies; (2) how long to impose the period of post-release control; (3) the conditions of post-release control; (4) the determination of whether post-release control has been violated; and (5) the penalty for post-release control violations.
Ohio courts have consistently held that a violation of the separation of powers doctrine is unconstitutional and shall not be permitted. In discussing the separation of powers doctrine, the Supreme Court of Ohio has stated:
 While Ohio, unlike other jurisdictions, does not have a constitutional provision specifying the concept of separation of powers, this doctrine is implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government. See State v. Harmon (1877), 31 Ohio St. 250. See, also, State, ex rel. Bryant, v. Akron Metro. Park Dist. (1929), 120 Ohio St. 464. While no exact rule can be set forth for determining what powers of government may or may not be assigned by law to each branch, Harmon, supra, at 258, `* * * [i]t is nevertheless true, in the American theory of government, that each of the three grand divisions of the government, must be protected from encroachments by the others, so far that its integrity and independence may be preserved. * * *' Fairview v. Giffee (1905), 73 Ohio St. 183, 187." South Euclid v. Jemison (1986), 28 Ohio St.3d 157, 158-159.
Relevant to the case before us, the Supreme Court of Ohio has held that "[t]he administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers."State ex rel. Johnston v. Taulbee (1981), 66 Ohio St.2d 417, paragraph one of the syllabus; State v. Hochhausler (1990),76 Ohio St.3d 455, 463-464. The Supreme Court of Ohio has further stated that
 "[c]ourts of general jurisdiction, whether named in the Constitution or established pursuant to the provisions thereof, possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions and cannot be directed, controlled or impeded therein by other branches of the government." Taulbee at paragraph two of the syllabus.[1]
In his post-hearing brief, petitioner cites for support the Eleventh Appellate District's decision in White v. Konteh (Mar. 23, 1999), Trumbull App. No. 99-T-0020, unreported, which found that R.C. 2967.11, S.B. 2's "bad time" provision,[2] violated the doctrines of separation of powers and due process. Regarding its separation of powers determination, the White court likened the procedure for imposing "bad time" to a criminal prosecution and determined that the delegation of a criminal offense to the APA was unconstitutional. The court reasoned that "the state legislature only has the authority to delineate the elements of a crime and state what type of sentence can be imposed for that crime. * * * [T]he legislature cannot actually impose that sentence. Only a court of law can perform such a function."
In its post-hearing brief, respondents, APA, compare the post-release control provisions to its statutory precursor, parole. APA argues that under either system the sentencing judge had no control over the time an offender would ultimately serve upon release from prison. The indeterminate sentencing scheme, was replaced in 1996 by Senate Bill 2's "truth in sentencing" provisions, enacted to provide definite sentences in order to protect the public safety. Under the old scheme, the sentencing court set the minimum and maximum prison terms which an offender was required to serve. The APA then exercised its discretion to pardon or parole the offender within the parameters of the court's sentence.
Upon careful review of the former and present APA supervision structures, we find that there are significant differences between the former parole system and post-release control. The most obvious distinction is that post-release control begins only after the offender has completed the prison term he was sentenced to in the trial court. Parole could be granted at any point after an offender served his minimum prison term, up until the maximum term had been served. Moreover, while both the decision of whether to grant parole and whether to impose a term of post-release control (for some third degree felonies and fourth and fifth degree felonies) are discretionary, the resultant effect is quite different.
Under the current system, a third, fourth and fifth degree offender is to serve the entire stated prison term and then, what happens after, is left entirely up to the APA. Under the parole system, there was no question that an offender who violated the terms of parole would be sent back to prison to serve the remainder of his stated sentence. Once the sentence was maxed out he was out of the system. The provisions of post-release control distinctly differ. Here, once the APA decides how long to place an offender on post-release control, the provisions allow for continued sanctions, including imprisonment and other residential sanctions well beyond the completion of the sentence given by the trial court.
The APA's brief acknowledges that if post-release control is not a component of the original sentence, then the APA has no authority to imposes the various sanctions. As to this matter, at the hearing on the petition, John Kinkela, from the APA, testified:
 "Q: Okay. So is it a fair statement that the Ohio Adult Parole Authority decides whether someone is under supervision, and then if they make a mistake on supervision, the Ohio Adult Parole Authority decides what the punishment shall be?
 "A: Let me just clarify with your respect to your question. You're talking about the nonviolent felony threes, F-4s and F-5s?
"Q: Yes, yes.
 "A: Yes, the Adult Parole Authority does decide whether or not someone is going to be placed under supervision. And then if they violate the terms of that supervision, what the sanctions should be within the limits of the statutes that apply.
"* * * *
 "Q: Okay. And it's possible then, is it not, for the parole authority to decide that somebody who is on parole — well, post-release control, and later decide that that parolee or releasee needs to do six, eight, ten months in various forms of detention, whether it's a Volunteers or a county jail, depending on the mistakes or screw-ups for violation of the post-release control, obviously?
 "A: Yes, I wouldn't term them mistakes, but I would term them —
"Q: Violations?
"A: — violations.
 "Q: Without that offender ever again facing the judge who sentenced him in the first place?
"A: Yes, that's possible."
"* * *
 "Q: Okay. Is it your position that the APA can do it now since even after [petitioner's] done the ten and five, that the APA can now add on, pile on, what the judge could not have piled on in the first instance?
 "A: Well, I feel the APA is administering the sentence that was imposed by the judge.
"Q: But —
 "A: And if post-release control sanctions, including county jail sanctions are included as possible outcomes as part of that sentence, I think the APA does have authority."
We cannot agree with Kinkela's assertion that the panoply of sanctions at the APA's disposal are part of the original sentence imposed by the trial court. This would allow the APA to, in effect, more than double an offender's period of incarceration without the review of the sentencing court. Whether or not a residential sanction falls under the definition of "prison" is immaterial, the offender has lost his liberty. When an offender is incarcerated at the behest of an administrative agency, and such sanction is not part of, nor could it have been part of the original sentence, the sanction is violative of the separation of powers doctrine. Accordingly, we find that R.C. 2967.28 is unconstitutional under the doctrine of separation of powers.
We further find that, as in White, supra, our finding that R.C. 2967.28 violates the separation of powers doctrine also supports petitioner's argument that his due process rights were violated.
The APA contends that petitioner was afforded the protections codified in Morrissey v. Brewer (1972), 408 U.S. 471. Such protections include notice, opportunity to be heard and present witnesses, confront and cross-examine adverse witnesses, examine the evidence, representation by counsel, and a written digest of the hearing. The APA further argues that, as with a parole revocation hearing, a post-release control violator is not required to go before a neutral and detached tribunal, rather the hearing need only be conducted by someone other than his parole officer.
Petitioner does not dispute that he was provided with the protections outlined in Morrissey, he argues that the post-release control violation sanctions are being imposed by a non-neutral decision maker. A single party with an interest in the outcome.
Even assuming that the determination of a post-release control violation is, in fact, made by a neutral decision maker, the mere fact that the APA is performing functions which were not contemplated by the trial court's sentence, denies an offender of his due process rights. Accordingly, we find that R.C. 2967.28
is unconstitutional in that it violates petitioner's due process rights.
Based upon the foregoing, we find that R.C. 2967.28 is unconstitutional in that it violates both the separation of powers doctrine and the Due Process Clauses of the United States and Ohio Constitutions. Accordingly, habeas corpus relief is granted.
It is the order of this court that petitioner, Milton Woods, be released from the control and supervision of respondents, Ohio Adult Parole Authority. Costs assessed to respondents.
RELIEF GRANTED.
Melvin L. Resnick, J._______ _______________________________ JUDGE
Richard W. Knepper, J.______ _______________________________ JUDGE
Mark L. Pietrykowski, J._____ _______________________________ JUDGE CONCUR.
[1] The separation of the judiciary from the executive and administrative branches of government has been a long-standing tenant in our system of democracy. In Federalist Paper No. 78, Alexander Hamilton stressed the need for judicial independence: "For I agree, that `there is no liberty, if the power of judging be not separated from the legislative and executive powers.'" Hamilton, The Federalist (1788), quoting from 1 The Spirit of the Laws 186.
[2] R.C. 2967.11(B) provides, in relevant part:
"As part of a prisoner's sentence, the parole board may punish a violation committed by the prisoner by extending the prisoner's stated prison term for a period of fifteen, thirty, sixty, or ninety days in accordance with this section. The parole board may not extend a prisoner's stated prison term for a period longer than one-half of the stated prison term's duration for all violations occurring during the course of the prisoner's stated prison term, including violations occurring while the offender is serving extended time under this section or serving a prison term imposed for a failure to meet the conditions of a post-release control sanction imposed under section 2967.28 of the Revised Code. If a prisoner's stated prison term is extended under this section, the time by which it is so extended shall be referred to as `bad time.'"