OPINION
This cause is before the court for a second time. We glean the facts and procedural posture of the case from this court's opinion in State v. Wozniak (May 23, 1996), Franklin App. No. 95APA03-345, unreported ("Wozniak I").
In May 1992, Mr. Wozniak was indicted by a Franklin County grand jury on single counts each of kidnapping, rape, attempted rape, felonious sexual penetration, gross sexual imposition, and one count of intimidation of a crime victim. Each of the six counts contained a specification indicating that he had previously been convicted of abduction.
The case was resolved in September 1992 when Mr. Wozniak entered guilty pleas to attempted rape, gross sexual imposition, and intimidation of a crime victim, all without the indicted specifications. The prosecution's recitation of the pertinent facts, as delineated in Wozniak I, is set forth below in our discussion of the first assignment of error.
Mr. Wozniak was sentenced to the following terms of incarceration: eight to fifteen years on the attempted rape conviction; two years on the gross sexual imposition; and, two years on the intimidation of a witness. All sentences were ordered to be served consecutively. In his first appeal, Mr. Wozniak successfully challenged the sentences imposed by the trial court.
In Wozniak I, this court sustained the assignments of error wherein Wozniak argued that the trial court erred in its sentencing by failing to determine whether the offenses of attempted rape and gross sexual imposition were allied offenses of similar import, pursuant to R.C. 2941.25. The case was remanded to the trial court for further proceedings to make such determination.
Upon remand in July 1996, the trial court conducted a hearing and ultimately entered the same consecutive sentences, concluding that the offenses did not merge as allied offenses for sentencing purposes.
The instant appeal stems from an R.C. Chapter 2950 "sexual predator" hearing conducted by the trial court in February 2000.
Richard D. Wozniak (hereinafter "appellant") has timely appealed the predator determination, assigning five errors for our consideration:
First Assignment of Error
 The trial court's decision finding Appellant to be a "sexual predator" as defined by [R.C.] 2950.01(E) is contrary to the weight of the evidence.
Second Assignment of Error
 The trial court erred in labeling Appellant a sexual predator because R.C. 2950.09(B)(2), which enumerates factors for courts to consider in determining the questions of fact arising in sexual predator hearings, impermissibly encroaches upon the power of the judiciary.
Third Assignment of Error
 The trial court erred in applying R.C. 2950.09(B) because the statute, as applied to those convicted of offenses committed before its effective date of January 1, 1997, but sentenced after January 1st, violates the ban on ex post facto lawmaking by the states set forth in Article I, Section 10 of the United States Constitution.
Fourth Assignment of Error
 The trial court erred in labeling Appellant a sexual predator because Chapter 2950 of the Ohio Revised Code violates the Equal Protection Clause [of] the Fourteenth Amendment to the United States Constitution.
Fifth Assignment of Error
 The trial court erred in labeling Appellant a sexual predator because House Bill 180, as applied to Appellant, constitutes double jeopardy in violation of the Fifth and Fourteenth Amendments to the United States Constitution.
Because appellant's third, fourth and fifth assignments of error raise threshold constitutional issues which are summarily disposed of, we address them first. The parties agree that the issues raised therein have been resolved in favor of the challenged legislation by the Supreme Court of Ohio. See, Statev. Cook (1998), 83 Ohio St.3d 404, and State v. Williams (2000),88 Ohio St.3d 513. Appellant expressly acknowledges that he raises these issues before this court solely for the purpose of preserving the issues for potential review in the federal courts.
The third, fourth and fifth assignments of error are overruled.
Turning now to the first assignment of error, appellant essentially contends that the trial court erred in finding appellant to be a "sexual predator" because the state failed to meet its burden of satisfying such a finding by clear and convincing evidence.
Preliminarily, we look to Wozniak I for the underlying facts[1] of this case:
 * * * On April 9, 1992, defendant approached the victim at the corner of East Broad and High Streets in Columbus, Ohio, and handed her an advertisement soliciting models for Hanes pantyhose. The advertisement indicated that willing models would be paid $50 for a photography session. The victim gave defendant her home telephone number; on April 11, 1992, defendant telephoned her and scheduled a photography session for April 15, 1992.
 On that date, defendant met the victim at a prearranged meeting spot in downtown Columbus. The two then proceeded to Bicentennial Park, where defendant took several photographs of the victim. After the session, defendant told the victim that in order to receive the $50, she would have to accompany him to the Leveque Tower. Once inside the building, the two proceeded to the seventh floor, where defendant forced the victim, at knifepoint, into a vacant restroom. Defendant then forced the victim onto the floor, pushed up her dress, removed her pantyhose and panties and attempted to force her to perform fellatio, which she refused.
 Upon her refusal, the victim was then forced to engage in vaginal intercourse with defendant. Afterwards, defendant left the victim on the restroom floor; after a few minutes had passed, the victim sought help. Shortly thereafter, police officers arrived and took the victim to Grant Medical Center, where she was treated. * * *
A "sexual predator" is defined as a person "who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). Rape clearly qualifying as a "sexually oriented offense," the issue in a sexual predator hearing is whether the state has proven by clear and convincing evidence that the offender is likely to engage in future sexually oriented offenses. R.C. 2950.09(B)(3); State v.Cook (1998), 83 Ohio St.3d 404. "Clear and convincing evidence" is more than a preponderance of the evidence but does not rise to the level of evidence beyond a reasonable doubt. State v. Ingram
(1992), 82 Ohio App.3d 341, 346.
In making its determination that an offender is a sexual predator, R.C. 2950.09(C)(2)(b) provides that the court "shall consider all relevant factors, including, but not limited to, all of the factors specified" in R.C. 2950.09(B)(2), which are:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexual oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
The transcript of the February 2000 predator hearing demonstrates that the trial court methodically questioned both counsel regarding each of the potentially applicable statutory factors. No live testimony was presented; the parties introduced certain exhibits and then argued their respective positions. The trial court concluded at the end of the hearing that the state had proven by clear and convincing evidence that appellant should be classified as a sexual predator.
In a decision and entry rendered in March 2000, the trial court set forth its analysis of the statutory factors:
 The Defendant, represented by counsel, and the State stipulated on the record to the facts of the underlying offense, conviction and to the following factors as prescribed by R.C. 2950.09(B)(2):
 a.) The Defendant was thirty-nine (39) at the time of the offense for which he is presently serving a term of incarceration of not less than eight years (8) nor more than fifteen (15) years at the ODRC [Ohio Department of Rehabilitation and Correction] on Count Three and two (2) years on Counts Five and Six to run consecutive to each other. Defendant is presently forty-seven (47) years of age.
 b.) The offender's prior criminal record regarding all offenses, including but not limited to, all sexual offenses, has been stipulated and admitted as State's Exhibit 10 and made part of this record. The Defendant has been convicted of a prior sex offense.
 c.) The age of the victim in the instant case was nineteen (19) years of age at the time of the sexually-oriented offense for which he is currently incarcerated.
 d.) The offense for which the Defendant is currently serving a period of incarceration included the attempted rape of one victim and gross sexual imposition and witness intimidation.
 e.) There is no evidence in the record that the offender used drugs or alcohol to impair the victim or to prevent the victim from resisting.
 f.) The offender[']s previous criminal record is stipulated and admitted as State's Exhibit 10. The Defendant has completed some sex offender counseling in the institution as reflected in Defendant's Exhibits A, B, C. Defendant is currently in the final stages of sex offender counseling in the institution.
 g.) The Defendant does not claim at the time of the offense he suffered from mental illness/disability.
 h.) The nature of the sexual contact with the victim includes rape by vaginal intercourse of a nineteen (19) year[-]old victim. There is evidence of a pattern of abuse toward the victim, insofar as the defendant used the threats of a knife during the course of the attack.
 i.) The offender did display cruelty to the victim during the commission of the sexually-oriented offenses by threats of violence with a weapon.
 j.) No other behavioral characteristics contribut[ed] to the offender's conduct.
The court summarized its thorough review by delineating the portions of the record upon which it relied in making its determination, including the following stipulated exhibits: the indictment; sentencing entry; amended sentencing entry; appellant's criminal record check; the transcripts of proceedings; the entries and this court's decision in appellant's first appeal; and, the post-sentence investigation report in the instant case.
While we cannot say that the trial court correctly applied the "demonstrated pattern of abuse" factor (h), the record sufficiently demonstrates that there was clear and convincing evidence to support the trial court's judgment.
The first assignment of error is overruled.
By his second assignment of error, appellant challenges R.C. 2950.09(B)(2) as being unconstitutional based upon the separation of powers doctrine. Specifically, he argues that the statute, which, as discussed above, requires trial courts to consider certain enumerated factors in determining questions of fact arising in predator hearings, "impermissibly encroaches upon the power of the judiciary."
The separation of powers doctrine was recently invoked by the Supreme Court of Ohio in State ex rel. Bray v. Russell
(2000), 89 Ohio St.3d 132, in which it found R.C. 2967.11 (Ohio's "bad time" statute) unconstitutional. In discussing the doctrine which requires the legislative, executive, and judicial branches of government to be "separate and balanced," the court stated:
 This court has repeatedly affirmed that the doctrine of separation of powers is "implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government." S. Euclid v. Jemison (1986), 28 Ohio St.3d 157, 158-159.
 "The essential principle underlying the policy of the division of powers of government into three departments is that powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments, and further that none of them ought to possess directly or indirectly an overruling influence over the others." State ex rel. Bryant v. Akron Metro. Park Dist. (1929), 120 Ohio St. 464, 473. * * * See, also, Knapp v. Thomas
(1883), 39 Ohio St. 377, 391-392; State ex rel. Finley v. Pfeiffer (1955), 163 Ohio St. 149, paragraph one of the syllabus.
The court ultimately found that the "bad time" statute was violative of separation of powers because it allowed the parole board, a member of the executive branch, to extend a prison term ordered by the judiciary for "criminal offenses" committed during incarceration, "whether or not a person is prosecuted for the commission of the offense." R.C. 2967.11(A).
 "In short, R.C. 2967.11(C), (D), and (E) enable the executive branch to prosecute an inmate for a crime, to determine whether a crime has been committed, and to impose a sentence for that crime. This is no less than the executive branch's acting as judge, prosecutor, and jury. R.C. 2967.11 intrudes well beyond the defined role of the executive branch's [sic] as set forth in our Constitution."
Id. at 135.
In August 2000, the Supreme Court of Ohio distinguished its holding in Bray in the context of R.C. 2967.28, the statute governing "post-release control" (formerly known as "parole" prior to the state legislature's overhaul of the criminal code, effective July 1996). In Woods v. Telb (2000), 89 Ohio St.3d 504, the court held that the statute does not violate the separation of powers doctrine.
In Woods, the court begins its analysis with the well-established premise that "* * * `[a]n enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' * * *" Woods at 510, quoting State ex rel.Dickman v. Defenbacher (1955), 164 Ohio St. 142, paragraph one of the syllabus; State v. Thompkins (1996), 75 Ohio St.3d 558, 560. "Further, the party challenging the statute bears the burden of proving the unconstitutionality of the statute beyond a reasonable doubt." Woods at 511, citing Thompkins, supra.
The Woods court went on to explain that a trial court, during sentencing, must inform the offender that he or she may be subject to a definite period of "post-release control" and that a violation of those conditions could result in additional prison time. The clear distinction, as aptly noted in Woods, is that under the "bad time" statute, "* * * a crime committed while incarcerated resulted in an additional sentence not imposed by the court." Id. at 511. In contrast, "post-release control is part of the original judicially imposed sentence." Id. at 512.
We cannot say that appellant has satisfied his heavy burden of establishing the unconstitutionality of that portion of R.C. 2950.09(B) which requires that the courts consider certain enumerated factors. The final factor, (j), is arguably a "catchall" factor which allows the trial judge certain discretion to consider "any additional behavioral characteristics that contribute to the offender's conduct." Of even further significance, while the statute requires consideration of the enumerated factors, the statute is prefaced with language directing the judge to consider "all relevant factors, including,but not limited to" those specified. Finally, the statute essentially provides a guideline for trial courts to follow in making their own findings of fact; the legislature does not make the factual findings.
Appellant directs our attention to the Miami County Court of Appeals' opinion in State v. White (Nov. 5, 1999), Miami App. No. 98-CA-37, unreported, in which a majority of the panel in the second appellate district agreed that to the extent the statute requires consideration of certain factors, the legislation violates the doctrine of separation of powers. In White, the majority held that "* * * it is beyond the constitutional power of the General Assembly to prescribe particular factors that a trial judge must consider when finding a fact." The court went on to conclude that the purpose underlying the statute "can be served by severing the factors set forth in R.C. 2950.09(B)(2) from the rest of the statute, and enforcing the statute minus the prescribed factors."
As indicated infra, we are not inclined to follow the majority's holding in White. Appellant has not brought to our attention, and our research does not reveal, any other appellate district which has followed this issue in White. Instead, we agree with the rationale and judgment of Judge Brogan's dissent inWhite, wherein he wrote:
 * * * In considering the separation of powers issue, it should be remembered that in many areas the branches of government have exercised overlapping powers. See United States v. Nixon (1974), 418 U.S. 683, 707, "the separate powers were not intended to operate with absolute independence." The general assembly and the Ohio Supreme Court share concurrent power for the promulgation and amendment of the Rules of Evidence. * * *
 The Colorado Supreme Court has held Colorado's rape shield statute does not violate the concept of separation of powers on the court's rulemaking powers in the case of People v. McKenna (1978), 585 P.2d 275. The court noted the statute reflected a major public policy decision by the general assembly regarding sexual assault and reflected far more than the day to day procedural operation of the courts. Justice Carrigan wrote persuasively, as follows:
 "Although certain aspect of the instant statute necessarily touch upon judicial matters, we recognize that legislative policy and judicial rulemaking powers may overlap to some extent so long as there is no substantial conflict between statute and rule. * * * While the three branches of our government are separate, equal, and coordinate, they are nevertheless branches of one government, and they cannot operate in mutually exclusive, watertight compartments. If government is to serve the people, each branch must seek to cooperate fully with the other two. Confrontations of constitutional authority are seldom in the long-term public interest and therefore are to be avoided where possible. * * * While our duty may occasionally require us to declare unconstitutional a statute adopted by the general assembly, we hold that power in reserve to be exercised only when the statute at issue cannot be reconciled with the constitution. McKenna, 589 P.2d at 279." [Citations omitted.]
As observed by the dissent in White, such "reconciliation" is readily accomplished under these circumstances:
 The decision to implement a "Megan's Law" * * * reflects a major public policy decision by the general assembly and the factors to be considered in determining the identity of sexual predators is properly a matter for it to decide.
 A defendant also has a substantive right not to be unfairly labeled a sexual predator as such a classification carries with it significant consequences. The rules regarding that determination [are] thus properly within the authority of the legislature pursuant to the Modern Courts Amendment, Art. IV, Sec. 5
of the Ohio Constitution.
* * *
 R.C. 2950.09(B)(2) provides non-exclusive factors that a trial court must consider in determining whether a convicted sex offender "is likely to engage in the future in one or more sexually oriented offenses." Without these guidelines the determination of who is a sexual predator is largely committed to the discretion of the individual judge. The legislature could not have intended such an unpredictable result. I fail to see how these non-exclusive factors differ from the non-exclusive factors trial courts are required to consider in establishing spousal support * * *. I would not find that the mandated factors * * * invade a "core function" of the judicial branch * * *." [Emphasis added.]
We agree with this rationale, particularly because of the "nonexclusive" nature of the list of factors to be considered, and the implicit premise that they serve as a "guideline" much the same as a plethora of constitutionally valid statutes requiring trial courts to consider various factors in making various judicial determinations.
For the foregoing reasons, we find no unconstitutional usurpation of judicial authority.
The second assignment of error is overruled.
Having overruled all five assignments of error, the judgment of the trial court is affirmed.
Glasser, J., retired, of the Sixth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] In Wozniak I, this court noted that "[d]efense counsel offered no exceptions to the prosecutor's recitation of the facts."