Jones, J.
 

 “Salus populi suprema lex est!”
 
 This is one of the ancient maxims of the law, that the welfare of the people is the paramount law. It is the pole
 
 *312
 
 star of police power legislation. Seldom, as in this case, have the three branches of onr government participated in effectuating legislation. The Governor proclaims its necessity; the Legislature proceeds to enact it; and the court is called upon to pass upon its constitutional validity. Acting within its scope, and in the exercise of its police powers, this poor relief act was passed by the General Assembly with the intent of promoting the common welfare. Its purpose is the alleviation of human suffering and the prevention of want by aiding the poor in their distress. And so like the Good Samaritan of old (St. Luke, 10:34) the state has extended a helpful hand to those of its people who, perhaps through no fault of their own, become destitute and needful of the necessaries of life.
 

 The entire act plainly discloses that its provisions were intended to be temporary rather than permanent in their operation, and limited to a brief period which the Legislature thought would cover the present state of our industrial depression. And so that waste and extravagance by the local authorities might be curbed and their local indebtedness supervised, the Legislature carefully safeguarded the practical operation of the act by imposing discretionary powers in the initiation of proceedings for relief thereunder upon three different boards, the commissioners of the county, the state relief commission, and the state tax commission.
 

 The constitutional validity of the act is now challenged by counsel for the respondents for various reasons, and we will deal with them
 
 seriatim.
 
 But in determining the constitutionality of the act, we are bound by that canon of statutory construction, frequently adhered to by this court, that only where there appears to be a clear incompatibility between the Constitution and the law will the law be declared to be void and the judicial branch of the government refuse to execute it.
 

 Is the act violative of Section 8, Article III, of the Constitution
 
 1
 
 That section, in part, reads: “The
 
 *313
 
 governor on extraordinary occasions may convene the general assembly by proclamation and shall state in the proclamation the purpose for which such special session is called, and no other business shall be transacted at such special session except that named in the proclamation”
 

 Reciting the article in full, the Governor issued his proclamation for the special session, and announced that the Legislature was called to consider the following purposes: Authorizing counties to issue bonds for relief purposes during a limited period and to a limited amount; increasing the excise taxes on public utilities for the retirement of such bonds as might be issued by the counties for relief; and creation of a temporary state relief commission with power of administering such relief laws as might be enacted. The Governor’s proclamation clearly contemplated that there were two chief purposes for which the Legislature was convened: (1) The issue of bonds for relief, and (2) increase of the public utility excise tax, the funds raised from that source to be applied to the retirement of the bonds that might be issued. The purposes of the act were complied with by the Legislature, which passed an act providing for relief and followed the method indicated by the Governor by levying the excise taxes stipulated in his proclamation. An inspection of the entire act clearly shows that the General Assembly complied with the proclamation, kept within its purposes, and transacted no business other than that limited in the proclamation.
 

 The provision of the Constitution is mandatory, and the Legislature is not empowered to legislate upon any subject except such as may be indicated in the proclamation, or which is germane or incidental to the general purpose stated in the proclamation; and the Governor, in his proclamation, can limit the business which the Legislature may consider. Manifestly the proclamation is not intended to invade the province of the
 
 *314
 
 Legislature by detailing the particular subjects of relief and the particular method to be employed therefor, or to minutely specify how much or in what proportion the excise tax collected should be allocated to the counties, or how and in what time the bonds issued by the political subdivision should be retired. These particular matters fall within the functions of the legislative power, and the proclamation was not intended to control these details so long as the Legislature hewed to the line of the purposes mentioned in the proclamation.
 

 Had the General Assembly legislated upon a subject not within its call, or had it not adhered to the limitation placed upon it in the proclamation, its action in that respect would be void. But in this enactment it studiously kept within the purposes named, not only in the furnishing of relief, but by providing relief by raising taxes in the method pointed out by the Governor. Respondents’ brief, although it criticizes some features of the act, does not indicate in what manner the legislation failed to comply with the purposes proclaimed by the executive.
 

 Does the act contravene the provisions of Section 22, Article II, of the Constitution? That section reads as follows: “No money shall be drawn from the treasury, except in pursuance of a specific appropriation, made by law; and no appropriation shall be made for a longer period than two years.”
 

 It is extremely doubtful whether this section applies to other than the state’s funds, or to obligations other than those of the state. In this law the state merely acts as the collector of the excise tax for the benefit of its political subdivisions; more than once in the act the state treasurer is denominated as the “paying agent of the county.” Section 6 of the act authorizes the auditor of state to certify the amount standing to the credit of the county, and to draw a warrant for such amount in favor of the county treasurer. But if
 
 *315
 
 it be conceded that this constitutional section applies to funds of the county, there is no attempt in the act to make any appropriation of the funds for a longer period than two years. It is manifest that the funds cannot be appropriated until they are collected; meanwhile, during the period that the act is in operation, the biennial sessions of the Legislature intervene, wherein appropriations within the terms of the act may be made.
 

 The act is challenged because it purports to authorize the state to contract debts in excess of $750,-000; and it is therefore claimed that it is violative of Section 1, Article VIII, of the Constitution. This contention has no foundation in fact. The act does not authorize the creation of a state debt in the sum of $750,000, or in any amount; nor does it authorize the state to issue any of its own bonds or obligations for the purpose of carrying out the provisions of the act.
 

 Section 5, Article VIII, of the Constitution, provides that “the State shall never assume the debts of any county, city, town, or township” unless they shall have been created to repel invasions, etc. Does this act contravene this section? Does it purport to assume the debts of any of the political subdivisions of the state? If yes, the act is void; otherwise it is valid.
 

 While the excise tax is levied upon public utilities of the state, and the levies are state wide, it is not a tax levied for state purposes, but for county purposes. Counsel for respondents, in their brief, intimate that the state might be called upon to execute bonds. This is not true because Section 3 of the act provides that “the county commissioners of such county may borrow money * * * for poor relief within the county and evidence such indebtedness by the issuance of negotiable bonds or notes,” etc. So there is no doubt that the obligations evidenced by notes or bonds are the obligations of the county and not of the state. The respondents argue that the act “provides that when
 
 *316
 
 the bonds are issued, they shall be paid from state funds and not from county funds.” This contention is not borne out by the provisions of the act. As heretofore stated, under Section 6 of the act the state auditor is made merely the custodian of the fund belonging to the county. This fund is payable to the treasurer of the county, and is “held in trust in a special fund of the county and applied solely to the payment of the principal of and the interest on the bonds issued under Section 3 of this act.” Furthermore, Section 6 provides that the county commissioners may deliver to the state treasurer a resolution appointing him as “the paying agent of the county as to such bonds,” with power to “retain such amount as may in his opinion be necessary to pay the principal and interest on the bonds of the county,” and to pay the balance, if any, to the county treasurer. This feature, touching the collection and allocation of the taxes by the state among its political subdivisions, is analogous to the same features found in existing statutes whereby gasoline, school, inheritance and other taxes are also collected and allocated by the state among its political subdivisions. We search the act in vain for any agreement or obligation upon the part of the state to assume the debts of any of its political subdivisions under the constitutional section last quoted.
 

 Section 11, Article XII, of the Constitution provides that no bonded indebtedness of a political subdivision of the state shall be incurred unless, in the legislation, provision is made for.levying and collecting annually by taxation an amount sufficient to pay interest on the bonds and to provide a sinking fund for their final redemption. Section 4 of the act provides for an annual levy of excise taxes upon the utilities during the years 1932 to 1937, inclusive, which, under the estimate and allocation of the tax commission, was believed to be sufficient to carry the burden of the bonds, both principal and interest. Furthermore, Sec
 
 *317
 
 tion 3 of the act provides that the issuance, sale and characteristics of the bonds shall conform to Section 11, Article XII, of the Constitution, and to the provisions of the uniform bond act governing their issuance. It cannot be said that the Legislature did not comply with said Section 11, Article XII.
 

 Finally, respondents advance the claim that the act is unconstitutional, being violative of Section 16, Article II, which provides that “no bill shall contain more than one subject, which shall be clearly expressed in its title.” The title to the act is: “An Act to authorize the issue of bonds by counties and cities and the expenditure of public money for the relief of the poor and unemployed, and the investment of public funds in such bonds, to levy an excise tax on certain public utilities. ” Were we to concede that the bill contains more than one subject, as argued by counsel, it has been held by this court that the foregoing provision of the Constitution is directory only.
 
 Pim
 
 v.
 
 Nicholson,
 
 6 Ohio St., 176;
 
 State, ex rel. Atty. Gen.,
 
 v.
 
 Covington,
 
 29 Ohio St., 102.
 

 Counsel appearing as
 
 amicus curiæ
 
 cites the case of
 
 Auditor of Lucas County
 
 v.
 
 State, ex rel. Boyles,
 
 75 Ohio St., 114, 78 N. E., 955, as sustaining his claim that the act here under consideration is unconstitutional ; and it must be conceded that there is considerable force in his claim, if we consider only the opinion of the judge writing it. However, in the later case of
 
 State, ex rel. Walton,
 
 v.
 
 Edmondson, Aud.,
 
 89 Ohio St., 351, 106 N. E., 41, the
 
 Lucas County case
 
 was carefully distinguished, and the Blind Act of 1908 as amended was upheld as a valid exercise of the legislative power; another reason for upholding it was because the entire matter was “left to the continuing and imperative supervision of the board of county commissioners.” On page 357 of his opinion in 89 Ohio State,
 
 *318
 
 106 N. E., 43, Johnson, J., in upholding the validity of the blind act, said: “Every safeguard has been adopted to secure the application of the money to the support of the individual and to prevent him from becoming a public charge. It is not an indeterminate annuity, unlimited in time or uncertain in its application. * * *
 
 It is not questioned that the relief of the poor is a proper public purpose.”
 
 (Italics ours.)
 

 In the instant case under the provisions of the relief act adopted by the special session in 1932, the entire matter of providing relief is also left to the continuing supervision of public boards, under safeguards securing the application of the moneys to the individuals who are in need; and the act does not grant to needy individuals indeterminate annuities, unlimited in time. In this aspect of the case the constitutionality of this act can be upheld under the rule announced in the
 
 Edmondson case, supra.
 
 Once only during the tenure of the present members of this bench has the Lucas County case,
 
 supra,
 
 been cited, and that was in the case of
 
 Miller
 
 v.
 
 Korns, Aud.,
 
 107 Ohio St., 287, 140 N. E., 773, wherein we held that funds raised by taxation for public schools were raised for public,, and not for private, purposes. In the course of her opinion Judge Allen said: “The sovereign people have not considered the giving of education to be a private purpose,” and education is “a matter of supreme public concern.” And that is true. If it be then a public purpose to afford education to prevent illiteracy, it follows as an obvious corollary that it is also a public purpose when the state assumes the duty of protecting its unfortunates from hunger and want.
 

 "We are therefore of the opinion that the act relating to relief passed March 31, 1932, approved April 5, 1932, and commonly known as Amended Senate Bill No, 4, is not violative of any of the provisions of the
 
 *319
 
 Ohio Constitution.- The demurrer of the relators to the answer of the respondents is sustained, and the writ will be allowed.
 

 Demurrer sustained and writ allowed.
 

 Marshall, C. J., Matthias, Day, Allen, Kinkade and Stephenson, JJ., concur.