Municipal Court of Columbus

## STATE OF OHIO v. HARRY GRAHAM.

Decided May 27, 1933.

388

*Wayne Fogle,* police prosecutor, for the state.
*Eugene L. Hensel,* for defendant.

KIME, J.

The defendant in this case is charged with the unlawful manufacture for sale of beer for beverage purposes without having paid the tax and without first obtaining the permit prescribed in Section 23 of an act entitled "An Act to Levy a Tax for the Purpose of Reimbursing the State for the Expense of Administering the Provisions of This Act and to Provide Revenues for the Support of the State and Sub-divisions thereof and to Regulate the Manufacture, Sale and Distribution of Beverages at Wholesale and Retail of Any Alcoholic Content Permitted by Law." This act was passed on March 30, 1933, was approved on the same day and by virtue of its emergency clause became effective from and after its passage and approval by the Governor.

This act levies a tax on the sale or distribution in Ohio of beer at the rate of $1.00 a barrel of thirty-one (31) gallons, which tax is to be paid by the manufacturer, provides for a Commission which is empowered to grant and rescind licenses for the manufacture, distribution and sale of beer at wholesale or retail. Various forms of permits are to be issued at varying fees dependent upon whether issued to a manufacturer, a wholesale distributor, the owner or operator of a retail store or to the owner or operator of a hotel, restaurant, club or amusement park.

For the purpose of the act, the term beer is defined as including, beer, lager beer, ale, stout and porter, and other brewed or fermented beverages containing one-half of 1% of alcohol, or more, by volume, but not more than 3.2% of alcohol by weight.

Under Section 23 of the act, any person, firm or corporation violating any of the provisions of the law, or who "manufactures for sale, distribution or sells, without first obtaining a permit or who sells any beverage upon which the tax provided for by this act has not been paid, shall be guilty of a misdemeanor and upon conviction shall forfeit any permit granted to him, or it, by the Commission and shall be fined not less than One Hundred Dollars ($100.00) nor more than One Thousand Dollars ($1,000.00) or be imprisoned not less than thirty (30) days nor more than six (6) months or both." There is a legislative declaration that each section and every part of each section, are to be independent and the holding of any section or part thereof to be void shall not affect any other section.

The court is directing attention to the last provision of the act for the purpose of showing an indication of legislative intent that the law shall not necessarily fall if part of it may be sustained, although the court recognizes that even such a declaration of legislative intent is not binding if the sections are actually inter-dependent and the dominant purpose is void. With this in mind, the demurrer might be disposed of, without a consideration of the constitutional objections urged by the defendant, on the ground that there is nothing in the federal or state constitution that would preclude the General Assembly from placing a *tax* upon the sale of the beverage. It will be noted that Section 6213-30 *et seq.* General Code effective shortly after the taking of the Eighteenth Amendment to the United States Constitution authorized the assessment of a tax notwithstanding the state and federal constitution have statutory prohibition enactments. This doctrine is based upon a generally recognized principle that the payment of the tax does not give a right to engage in the traffic of intoxicating liquors nor relieve one from criminal liability for so doing. It is purely a tax or an assessment upon the business and may be assessed whether that business is legal or illegal. As one of our courts has pointed out there is no inconsistency in taxing a traffic that has been rendered illegal and upon this aspect it is immaterial whether the illegality arises because the traffic is prohibited by ordinance, by statute or by constitution, See 274 U. S. 259; 272 U. S. 321; 25 Fed. (2) 788; 23 Ohio Juris. 117, 118; *Krnich* v. *Mc-*

*Cleary,* 103 Ohio St. 457; *State* v. *Zangerle,* 14 Ohio App. 99; 23 Ohio Juris, pp. 116, 117.

It must be borne in mind that the manifest design of the entire statute is to permit the sale of beverages containing not to exceed 3.2 per centum of alcohol by weight, and it is rather clear to the court that the licensing and the taxation are so interwoven and connected with the general scope of the whole statute as to make it doubtful if the General Assembly would have enacted the taxing provision in this language if the licensing features had been omitted; although in view of the declaration of divisibility this doubt should probably be resolved in favor of sustaining the law even if the licensing feature were treated as invalid as sanctioning a violation of the Prohibition Amendment. *Corp. Com.* v. *Champlain Refining Co.,* 286 U. S. 210.

As the licensing feature is held to be valid, it is unnecessary to consider this question, and the court will now discuss the particulars in which the act is said to be obnoxious to the federal and state constitutions.

The first point urged is that the enactment violates Section 1 of the Eighteenth Amendment to the Constitution of the United States. Counsel does not quote the entire amendment which reads as follows:

"Section 1. After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereto into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

"Section 2. The Congress and the several states shall have concurrent *power to enforce this article by appropriate legislation.*"

The significance of the italicized language cannot be overlooked. Section 1 is not self-executing. Legislation by Congress or the states is essential to carry into effect prohibition against the manufacture and sale of intoxicating liquors. Suppose that there were no legislation, the result would be that there would be no way of enforcing prohibition.

In *United States* v. *Butler Hotel Co.,* 32 Fed. (2d) 324, it is said:

"The purpose of the Eighteenth Amendment is to prevent the use of intoxicating liquor as a beverage. It is not self-executing, but is given vitality by the national prohibition act."

It will be observed that Section 2 does not say that Congress is required to enforce the Amendment but on the contrary gives Congress the *power* to enforce the article by appropriate legislation, and this power, of course, must be to define what are intoxicating liquors—that is, what is intoxicating in fact and according to common usage. The expression "intoxicating liquors" is a relative term. The influence of alcohol varies with age, health, general habits and the condition of the stomach at the time the beverage is drunk. One of the medical authorities of New York has said that the "intoxicating effect of liquor is the best all round guessing game of all time": Hamlin on Intoxication. See: Conn. Bar Journal, p. 294-296.

Courts have found great difficulty in defining the meaning of this term and often leave it to the jury: *Texarcana* v. *Frazier*, 43 Texas Civ. App. 48-53; *Midland etc. Rwy. Co.* v. *Hamilton*, 84 Ark. 81.

Many medical authorities say that one-tenth of 1% of alcohol is necessary to produce the lightest form of intoxication and estimate that the consumption at one time of more than a gallon of 2.75% beer is required to inject a one-tenth percent of alcohol, as much of the beverage does not become effective and it is impossible for one person to consume that much at one time when the liquid does not contain more than 2.75% of alcohol which is consequently not intoxicating. 8 Central Law Journal, p. 57.

The Congressional debates show that this question was carefully considered prior to the enactment of existing federal legislation authorizing 3.2 beer. There was some dispute about the alcoholic content that was to be permitted but the existence of that would only indicate that the question of the intoxicating property of such beer was a disputed or doubtful matter. Congressman Dyer stated that Mr. Volstead had admitted that 3% beer was not intoxicating and that Mr. Wayne B. Wheeler so testified at one time. Before Ontario went wet it was said that 4.4% beer by volume was sold as non-intoxicating. The uncontra-

dicted test before the Ways & Means Committee, it was asserted, disclosed that 3.2 beer was not intoxicating and that Committee reported that "beer of a content of 3.2% by weight is not intoxicating." It seems to be an elementary concept of constitutional law that where the constitutional validity of a statute depends upon the existence of facts, *the courts cannot, where the question of what the facts establish is a very debatable question, set up their opinions against the opinion of the legislative body that enacted the law.* Prof. Henderson of the chair of Applied Physiology of Yale University testified "a bottle of light beer is distinctly less intoxicating (that is less toxic) than a cigar." (Harpers Magazine for June 1933.)

Mr. Chief Justice Hughes in delivering the opinion in *Sproles* v. *Binford,* 286 U. S. 374, says:

"To make scientific precision a criterion of constitutional power would be to subject the state to an intolerable supervision hostile to the basic principles of our Government * * * when the subject lies within the police power of the state, debatable questions as to reasonableness are not for the courts but for the Legislature, which is entitled to form its own judgment, and its action within the range of discretion cannot be set aside because compliance is burdensome."

Mr. Justice Stone expresses the same thought in somewhat different language, in *Standard Oil Co.* v. *Marysville,* 279 U. S. 582, saying:

"We need not labor the point, long settled, that where legislative action is within the scope of the police power, very debatable questions as to its reasonableness, wisdom and propriety are not for the determination of courts, but for that of the legislative body on which rests the duty and responsibility of the decision."

The question was given a good deal of consideration in a case in which the other side of the shield was presented.

In *Rhode Island* v. *Palmer,* 253 U. S. 350, the state sought to enjoin the Volstead Act adopted to enforce the prohibition amendment. Among the points raised was that the definition of an intoxicating liquor contained in the national prohibition act was arbitrary, oppressive and unconstitutional. This was vigorously presented by two great leaders of the Bar, Messrs. Elihu Root and William D. Guthrie.

Mr. Justice VanDevanter in deciding the case recognized that there were limits beyond which Congress could not go in treating beverages as within its power of enforcement, but held that those limits were not transcended wherein liquors containing as much as one-half of 1% of alcohol by volume were treated as within the power. It is interesting to observe that Mr. Chief Justice White in concurring says that as the constitutional prohibition does not define the intoxicating beverages which it prohibited, it clearly cast upon Congress the *duty, not only of defining* but also of enacting essential regulations and sanctions to make the amendment operative. Mr. Justice Clarke remarks, that the majority opinion approves as valid a definition of liquor as intoxicating which is expressly admitted not to be intoxicating, and with great prescience says:

"It does not require the eye of a seer to see contention at the bar of this court against liberal paramount congressional definition of intoxicating liquors as strenuous and determined as that which we have witnessed over the strict definition of the Volstead Act."

Mr. Justice Brandeis again goes into the question in *Lambert* v. *Yellowley*, 272 U. S. 581, wherein the restriction of prescriptions of intoxicating liquor to a pint was upheld. In discussing this phase of the question language that is here very pertinent will be found. He refers to *Everhard's Brewery* v. *Day*, 265 U. S. 545, where the validity of a prohibition act prescribing malt liquors was assailed; observes that Congress must be regarded as having concluded, in the absence of any concensus of opinion among physicians, that malt liquor has no substantial medicinal qualities making its prescription necessary, adding:

"and that this made it impossible to say the provision was an unreasonable and arbitrary exercise of power *** Congress, in deference to the belief of a fraction of the medical profession that vinous and spirituous liquors have some medicinal value, has said that they may be prescribed in limited quantities according to stated regulations."

He emphasizes that Congress had reached a conclusion, "in presence of the well known diverging opinions of physicians," and such a finding "cannot be regarded as arbitrary or without reasonable basis."

We have here precisely the same principle as that enunciated in the foregoing decision. There is a divergence of opinion on whether 3.2 beer is intoxicating; Congress gave the question consideration before enacting the law; the subject is one incapable of being definitively settled by testimony of scientist, expert or man in the street, the idiosyncrasies, beliefs, prejudices, experiences and temperament of the individual enter into all questions of this character. The most that can be urged against the validity of the law is that in some instances intoxication might result from the use of an excessive quantity of beer containing the authorized alcoholic content. Congress and the legislative body are required to use some degree of judgment and discretion in the determination of a legislative question of this character, and having done so, this court does not believe that it is authorized to say that their action is so arbitrary and so lacking in reasonable bases as to justify any court in nullifying it. We have here a situation where there is an effort to make disputed scientific view determinative of the exercise of constitutional power, which as Mr. Justice Hughes has said would be to subject the Government to a supervision hostile to its basic principles. Whatever *debatable question* may have arisen of whether 3.2 beer is intoxicating is for the law makers and not for those whose duty it is to construe those laws; Congress or the Legislature are entitled to form their own judgment and exercise their own discretion and their action within reasonable range must be upheld. In concluding upon this point it may not be amiss to say that if Congress has the right, as the Supreme Court has held, to determine that a non-intoxicating beverage may be prohibited in the exercise of congressional discretion, it should follow that when Congress has used a more liberal rule in the definition of intoxicating liquors, that rule should be upheld, provided it is not clearly arbitrary and in defiance of the constitutional mandate. Of course, if Congress or the Legislature should exceed all bounds of propriety and pass beyond debatable ground into a field into which it clearly should not trespass, then its action would and should be held unconstitutional, but the court does not find that there has been any such arbitrary and flagrant abuse of discretion or such

unreasonableness of definition in the act in question as to permit a court to set aside the finding of the coordinate branch of government. The language of Mr. Justice Holmes in *Railway* v. *May*, 194 U. S. 267, admirably expresses the governing principle:

"The question is whether this case lies on one side or the other of a line which has to be worked out between cases differing only in degree. With regard to the manner in which such a question should be approached, it is obvious that the Legislature is the only judge of the policy of a proposed discrimination * * * Great constitutional provisions must be administered with caution. Some play must be allowed for the joints of the machine, and it must be remembered that Legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts."

In another case he has expressed the thought in this way:

"While the courts must exercise a judgment of their own, it by no means is true that every law is void which may seem to the judges who pass upon it unsuited to its ostensible end, or based upon conceptions of morality with which they disagree. Considerable latitude must be allowed for differences of view, as well as for possible peculiar conditions which this court can know but imperfectly if at all."

In speaking of the law there before the court he added that "it is shown by its adoption to have expressed a deep seated conviction on the part of the people concerned as to what that policy required. Such a deep seated conviction is entitled to great respect" (*Otis Etc.* v. *Parker*, 187 U. S. 606). By a parity of reasoning it may be properly said that the Legislature in this case should be allowed latitude on account of the differences of view on the particular question with which we are here concerned, and that they as representatives of the people have enunciated a conviction that is entitled to weight and respect.

In view of the judgment of the court that the modification by Congress of the Volstead Act is not unconstitutional, it is perhaps only a matter of *obiter* to discuss the right of the General Assembly of Ohio to legislate on the subject in the manner in which it has done in the bill in question, insofar as such a legislation is affected by the Eighteenth Amendment. It is, of course, elementary that the state

may not authorize one to deal in intoxicating liquors for beverage purposes if that liquor contains more than the percentage of alcohol prescribed by a federal statute carrying into effect the Eighteenth Amendment, but that does not imply that the State may not pass appropriate legislation to punish those who deal in beverages containing a greater percent of alcohol. Its refusal to punish where the percent of alcohol was equal to or less than that prescribed by the Government would not obstruct or impede the right of the United States to do so under its law. This question arose in *Ex Parte Finnigan,* 270 Fed. 665, where it was held that even though the provision of the Walker Act of New York, permitting the sale of beverages containing 2.75% of alcohol or less is in conflict with the Volstead Act, the provisions of that law prohibiting the sale of liquor containing more than that percentage are separable and sufficient to sustain a prosecution for violation thereof. The Walker Act defined as intoxicating, beverages containing more than 2.75% of alcohol by weight, and as non-intoxicating beverages with an alcoholic content of one-half of 1% to 2.75% by weight. The leading cases on this subject are: *Commonwealth* v. *Nickerson,* 236 Mass. 307; *State* v. *Gauthier,* 121 Maine 522; *Ex Parte Volpi,* 199 Pac. 1090; *Ex Parte Gilmore,* 88 Texas Crim. Repts. 529.

On the other hand, it has been held that a state statute tending to validate the sale of intoxicating liquors in excess of the alcoholic content defined by the Volstead Act is invalid: *Belaguer* v. *Macey,* 238 S. W. 322.

In *Vigliotti* v. *Pennsylvania,* 258 U. S. 403, Vigliotti was found guilty of selling intoxicating liquors without a license under a statute of Pennsylvania passed on May 13, 1887. The liquor was Jamaica Ginger containing 88% alcohol. The defense was that the sale had been made after the effective date of the Eighteenth Amendment and the Volstead Act. The Pennsylvania law applied no matter how small the percentage of alcohol and although the liquor was not as a matter of fact intoxicating. Mr. Justice Brandeis points out that the law was primarily prohibitory and that *those features were not dependent upon the licenses* so as to be swept away by the Eighteenth Amendment and the Volstead Act. The law was held to survive as the state's

police power method of officially listing and adequately controlling the customary sources of general supply and distribution to the people of the state of those kinds of liquors among which intoxicating beverages were usually found, hence, it was construed as *not purporting to authorize or sanction anything* which the Eighteenth Amendment or the Volstead Act prohibited.

The Supreme Court of Ohio held in *Krnich* v. *McCleary*, 103 Ohio St. 457 fully answers the contentions made here, holding that Sec. 9, Article XV was not intended to relieve those violating prohibition laws from burdens or restrictions upon the traffic hence an assessment upon it was not inconsistent with the constitution.

In *State* v. *Ceriani*, 96 Conn. 130, the court held that the national prohibition act did not deprive the state of its right to exercise its police power in the regulation and restriction of the liquor traffic, provided that such regulation and restriction did not conflict with the provisions of that act, but that such act invalidated those statutes of the state which were in conflict with it in view of the Eighteenth Amendment; that each state had the right to act independently of Congress in aid of the amendment, but in case of conflict the federal act should prevail. The conflict in the Ceriani case consisted in *authorizing* the sale of liquor containing more than one-half of 1% of alcohol. It was held, however, that the act was not invalid insofar as it authorized the issuance of a license for the sale of liquor containing less than one-half of 1% of alcohol. While the right to license such sales was not valid, nevertheless the penalty for making the sales was not invalidated. This was on the theory that the enforcement of the penalties of the state statute would help in the enforcement of the amendment and was not antagonistic to the national act, and was, consequently, appropriate legislation within the meaning of the Eighteenth Amendment. Here we have a case where there was a judicial separation of the valid from the invalid, but it was applied to a pre-existing law which may mark a distinction.

The thought that the court has expressed on the divisibility of the Ohio law is that enunciated by the Supreme Judicial Court of Massachusestts in *Jones* v. *Weston*, 238

Mass. 218. In December, 1920, Massachusetts defined non-intoxicating beverages as those containing not less than one-half of 1% and not more than 2.75% of alcohol, and enacted that no person should sell intoxicating liquor except as authorized by the statute. Other sections permitted the granting of licenses for the general sale of non-intoxicating beverages. The court held that no law of the state could authorize sales prohibited by the laws of the United States enacted pursuant to the Eighteenth Amendment. The view of the court was that the main purpose of the Massaschusetts enactment was prohibiting the sale of intoxicating liquors as a beverage and that plainly a large number of the sections were valid and enforceable under the Eighteenth Amendment in conjunction with the Volstead Act. While the definition of intoxicating liquor differed from that of the Volstead Act, such difference would not render inseparable the sections which were genuinely appropriate for the enforcement of prohibition enjoined by that amendment; that the valid and enforceable parts were so independent of the inoperative portions as to lead to the conclusion that they would have been enacted apart from the latter and, therefore, the valid parts could be separately enforced · and thus effectuate the main purpose of the Eighteenth Amendment. The selectmen of the town of Weston were, therefore, held authorized to insert in the warrant for a town meeting an article providing for a vote on the question if licenses should be granted for the sale of non-intoxicating beverages. See also: *State* v. *Roberson*, 160 La. 155; *Hazel Drug Co.* v. *Wilner*, 224 Pa., 361.

On the other · hand, of course, state legislation cannot give validity to acts prohibited by the Eighteenth Amendment. (*McCormick & Co.* v. *Brown*, 286 U. S. 131)

This question, therefore, if it were necessary to decide it, would turn on whether the Ohio law, enacted after the modification of the Volstead Act would have been adopted by the General Assembly for the purposes of carrying out certain parts of it that may be valid under the foregoing decisions. It appears to this court that the major purpose and sole ground for the passing of the act was to levy a tax and regulate the manufacture, sale and distribution of beer, the manufacture of which was authorized by the modifica-

tion of the Volstead Act; but as this provision is valid there is no reason for considering what would be the effect of the invalidity of this revenue producing, dominant feature. The act levies a tax upon beer, authorizes its manufacture and distribution, with some degree of particularity, and then expressly defines beer as a beverage containing one-half of 1% or more of alcohol by volume but not more than 3.2% of alcohol by weight, it may be plausibly argued that this is the all-pervading purpose of the statute and, hence, if the licensing feature be void the whole act should fall and that this is true, notwithstanding the declaration that the invalidity of part shall not affect the remainder. The foregoing decisions however do not support this reasoning. This declaration, of course, is only an aid to interpretation and not an inexorable command; it reverses the common law presumption that the Legislature intends an act to be effective as an entirety and creates the contrary presumption of divisibility, which must be overcome by considerations that make evident the clear probability that the Legislature would not have been satisfied with the statute unless it had included the invalid part. For decisions discussing the construction, effect and binding force of such a declaration of separability, see: *Williams* v. *Standard Oil Co.*, 278 U. S. 235; *Hill* v. *Wallace*, 259 U. S. 44; *Dorchy* v. *Kansas*, 264 U. S. 286; *State* v. *Montgomery*, 177 Ala, 212; *Nickson* v. *Allen*, 150 Ark. 244; *Re Questions of the Governor*, 75 Colo. 317; *State* v. *Bancroft*, 148 Wis. 124; *Springfield Gas Etc. Co.* v. *Springfield*, 292 Ill. 236; *Compare Corp. Com.* v. *Champlin Refining Co.*, 286 U. S. 21.

Of course, it is unnecessary to enter upon a further discussion of this question because the Ohio statute conforms to the Volstead Act as modified and as this court has held that act constitutional under the Federal Constitution, no conflict arises between the Ohio statute and the Eighteenth Amendment to the Federal Constitution and congressional legislation exercising and defining the degree of alcoholic content rendering a beverage intoxicating.

Counsel for the defendant argues that Section 9 of Article XV of the Ohio Constitution renders invalid the act in question. The first section of this article is, to all practical purposes and intents, similar to Section 1 of the Eighteenth

Amendment to the Federal Constitution, excepting that it contains the provision permitting the manufacture or sale of such liquors for medicinal, industrial, scientific, sacramental or other non-beverage purposes and in what is designed to be mandatory form enjoins upon the General Assembly the duty of enacting laws to make that provision effective. What relief could be afforded if the general assembly refuses to act is not made manifest.

This raises precisely the same question as is presented in the discussion of the Federal Constitution. In enacting the laws to make the provision effective, the General Assembly is required to consider what are "intoxicating liquors." To arrive at a scientific, medical or common sense finding of what liquor is intoxicating, is a question of fact, which within certain boundaries is practically impossible of precise ascertainment. What intoxication is, and what alcoholic content in liquor will produce intoxication is as vague as the mental attitude of the jesting Pilate when he asked the question which has since been ringing down the vaults of history: "What is truth?" Exercise of discretion and judgment of the legislative body, charged with enacting this statute to effectuate the purposes of the constitutional provision, is required, and unless this court is satisfied that such discretion has been clearly abused by an arbitrary legislative declaration that a beverage is not intoxicating when as a matter of fact it is clearly and unequivocally intoxicating, it has no right to find that the conclusion of the General Assembly is so patently false as to justify the court in so announcing in order to hold the enactments invalid.

It is the opinion of this court that the statute is a reasonable, warranted exercise of the power conferred upon the Legislature by the prohibition amendment to our Constitution. It may not be amiss upon this point to remark that in this case the court has before it no evidence whatever to show that 3.2 beer is an intoxicating beverage, and certainly it does not take judicial notice that the beer will produce intoxication. For instance, in *State* v. *Piche*, 98 Maine 348, the court said:

"The court cannot say, as a matter of law, that a liquor which contains 3% or more of alcohol is intoxicating, and that one that contains a less percentage is not."

See also: *Sullivan* v. *State,* 48 Texas Crim Repts. 201; *Harris* v. *State,* 86 S. W. 763; *Potts* v. *State,* 89 S. W. 836; *Klare* v. *State,* 43 Ind. 483-485; *Kurz* v. *State,* 79 Ind. 488-490.

There is nothing in *State* v. *Nunlist,* 9 N. P. (N. S.) 103, cited by defendant which militates against this view.

It must be borne in mind that intoxicating liquors in contemplation of the constitutional provision are those intended for use or capable of being used, as a beverage, and which contain alcohol in such proportion or percent that when consumed in the quantity which may practically be drunk by an ordinary man, or in such quantity that the stomach will ordinarily hold, will produce a condition commonly known as intoxication or drunkenness. Drunkenness or intoxication is a materially abnormal mental or physical condition, manifesting itself in the loss of the ordinary control of the mental faculties or bodily functions to an appreciable or material extent. The court does not believe that one can be said to be intoxicated when he merely reaches that stage of "mental inhibition" represented by Prof. Munsterberg of Harvard, as one of beneficient results of the use of certain liquors as a beverage, and cannot say, as a matter of law, or fact, that 3.2 beer can be drunk in sufficient quantities even to bring about this inhibition.

In considering the validity of statutes, it is well to bear in mind what has been said of the power of courts. They "must be cautious about pressing the broad words of the Fourteenth Amendment to a drily logical extreme"; if "there are few certain criteria of legislation"; if "it is often difficult to mark the line, where what is called the police power is limited by the constitution"; and, therefore, "judges should be slow to read into the latter a *nolumus mutare* as against the law making power"; if the police power "may be put forth in aid of what is held by strong and preponderant opinion" (Mr. Justice Holmes in *Noble State Bank* v. *Haskell,* 219 U. S. 104), it seems that the same doctrines should apply to the exercise of legislative power in denying an intoxicant, where that body has not clearly gone beyond the faint and shadowy line that marks the limits of its powers.

The mere fact, which counsel urges, that under the old

laws a malt liquor was classified as intoxicating *by statute,* does not mean that it was in fact intoxicating or that the General Assembly had the right to classify it as such under a constitutional mandate defining intoxicating liquors. On the contrary the discussion of this subject in *State* v. *Walter,* 83 Ohio St. 68, upholds the statute making it unlawful to sell near beer under the county local option law on the ground that the statute applied to malt liquors. The classification of it with intoxicating liquors was authorized on the theory that the enforcement of the local option law should not be defeated by subterfuge, and, as the court say, the legislative fiat had gone forth that malt liquor was intoxicating, just as this court has here holds when the legislative fiat has gone forth that 3.2 beer is not intoxicating that is the end of it in view of the fact that there does not appear to have been any abuse by the Legislature of its constitutional powers of definition. The same doctrine is enunciated in *Ruppert* v. *Caffey,* 251 U. S. 264, where such legislation is upheld on the theory that such legislative action is properly based upon the deemed impossibility effectively to enforce prohibitory laws if liability is made to depend upon the issuable fact of whether a beverage is intoxicating; that the legislature may properly decide that to render the prohibition law effectual of enforcement, it must be made to apply to all liquors of the species enumerated regardless of the presence or degree of alcoholic content. Reliance is had on *Purity Extract Co.* v. *Lynch,* 226 U.S. 192, in which the validity of legislation of this character is rested upon the theory that when the state undertakes to suppress what it regards as a public evil, it may adopt such measures having reasonable relation to that end, as it may deem necessary to make its action effective; and it does not follow that because a transaction separately considered is innocuous, it may not be included in a prohibition the scope of which is regarded as essential in the legislative judgment to accomplish the purpose of the General Assembly. In that case it was held proper for the Legislature of Mississippi to prohibit malt liquors when it was dealing with a class of beverages generally regarded as intoxicating, and it was held not bound to resort to a discrimination with respect to the ingredients and products of

manufacture which, in the endeavor to eliminate innocent beverages from condemnation would facilitate subterfuge and fraud and fetter the enforcement of the law. The state, within limits, must decide upon measures that are needful for the protection of its people and have regard to artifices which might be used to promote the sale of intoxicants under the guise of innocent beverages. All of this but emphasizes the recognition of legislative power to deal with the subject free from court control.

The defendant assumes that 2.75% beer was sold where intoxicating liquors had been handled, prior to the constitutional amendment and that it, therefore, was regarded as an intoxicating beverage. Such an argument seems to the court to be specious rather than sound. One cannot decide a liquor is intoxicating because of the company it keeps. The court has learned through tradition that lemonade, soda water, mineral water, and milk were sold in the old time saloons and water was there given away. These facts, however, would not make these fluids that produced no exhilarating effects intoxicating. The court is not impressed by the reasoning that the reputation of 2.75% beer as being an intoxicant justifies it in holding that this case should be decided upon these reputed properties. Both Congress and the Legislature have evidently felt that this beverage either did not have or did not deserve this reputation and have washed it whiter than wool. The argument that the mandatory provision of the Constitution binds the General Assemply not to enact legislation authorizing the sale of intoxicants, is but begging the question, or arguing in a circle, because it starts with the premise that 3.2 beer is intoxicating, which, in the opinion of this court, is an unsound premise for the reasons heretofore given.

The fact that the Commission in charge of the administration of this law is called the "Ohio Liquor Control Commission," instead of "The Ohio Soft Drink Commission" has no bearing upon the merits of this case. Names are not Aladdin's lamp magically producing genii; and as a matter of nomenclature the word "liquor" appropriately describes any liquid or fluid substance such as blood, water, milk, fruit juices—in fact any fluid substance—as well as intoxicants. It is asked why it referred to as an alcoholic bever-

age if it is a solf drink? Probably because it has an alcoholic content, but the mere fact that it contains alcohol does not show that it is an intoxicating liquor. The narrow and restricted interpretation of "liquor" that counsel insists upon, if carried to its logical extreme would force the implication that its technical meaning is "to be confined to distilled liquids." To those who remember the old time signs over the saloons, this theory is very vivid as those signs usually offered for sale "wines, beer and liquors," thus marking the distinction between the fermented, the brewed and the distilled products of the fruits of the earth. One of the United States senators for this reason insisted that the prohibition amendment would not apply at all to beer and wine. This argument, however, has more philological interest than practical value.

The defendant seems to think it more than passing strange that the act should provide for rules and regulations dealing with the sale of beer and that it prohibits such sale to persons under sixteen years of age. The complete answer to it is that the General Assembly by virtue of its powers to tax and license may prescribe appropriate regulatory measures even for what counsel calls "harmless soft drinks." The Supreme Court of the United States as well as the Supreme Court of Ohio in cases herein cited point out that a non-intoxicant may even be prohibited in order to bring about the elimination of the manufacture and sale of those beverages that are admittedly intoxicating.. The design of these regulatory measures is to prevent the sale of those beverages which are actually intoxicating and which are prohibited by the present statute; to curb the activities of bootleggers; to take the kick out of corn whiskey; to take home brew off the market and otherwise to enforce restrictions not only against the drink that intoxicates but also to prevent evasions of this taxing measure. The provisions of the act seem to the court appropriate to the accomplishment of these purposes. There is no discounting the fact that wherever most soft drinks are sold, there is always an opportunity to supply those who desire a real intoxicant, and, hence all places where soft drinks are sold may be properly regulated in order to prevent evasion of the law. The court can see no reason why the Legislature may not

properly discriminate in such provisions as are contained in the act. There is no constitutional mandate that prohibits classification provided that classification is not arbitrary, fanciful and fictitious; if it has any real basis, it is universally upheld. Regardless of this, however, the court does not see how defendant is in any position to complain about any onerous restrictions as he does not claim that these restrictions in any way affect him. It is rather universal concept of constitutional law that before one can argue the unconstitutionality of a provision of law, he must show that he comes within its purview. 8 Ohio Juris. p. 639. *Tyler* v. *Judges*, 179 U. S. 410; *Utah Power & Light Co.* v. *Pfost*, 286 U. S. 165; *Young Co.* v. *McNeil-Edwards Co.*, 283 U. S. 98; *Corporation Commission* v. *Lowe*, 281 U. S. 431; *Norwood* v. *Ward*, 46 Fed. (2d) 312.

The reports are replete with decisions sustaining regulatory legislation prohibiting the use by minors of things regarded as innocuous when indulged in by adults; the classification between adult and infant is not arbitrary: *Austin* v. *Tennessee*, 179 U. S., 341, and those cases dealing with pool rooms, dancing halls etc. (20 A. L. R., 1487; 48 A. L. R., 154; 8 Ohio Jur. p. 647. See Section 12962 *et seq.*, General Code.)

The defendant here is charged with unlawfully manufacturing for sale beer for beverage purposes without having paid the tax or obtaining the permit. There can be no question of the right to levy the tax and that section could stand even if part of the licensing regulations were invalid, but defendant cannot even complain about the license because he has not shown that he applied for a license and was refused. Moreover, there is no constitutional infirmity in requiring a license.

There can be no doubt that one cannot complain of a law providing that no person convicted of a liquor violation or a felony shall have a permit. This is an appropriate measure to obviate the violations of law. One engaged in operating a place where the opportunity for law violation is afforded, should be a man of standing and character in order that there is reasonable assurance that toleration of law violation will not occur in the licensed place. Counsel are in error in assuming that this is a recognition of the

intoxicating nature of the beer. It is to prevent the sale of liquors the General Assembly clearly recognizes as intoxicants that these provisions have been enacted.

It is objected that under Section 19 of the Act, there is provision for local option which will permit the exclusion of the sale of this beer in certain districts if the residents so desire. There is nothing invalid about this provision nor does it recognize that the product sold is intoxicating. It is quite true that there is a feeling among some people that this beer is intoxicating, or if not intoxicating at least obnoxious, and if in a particular locality the inhabitants desire to condemn the product because of their personal feelings or prejudices against it, there is no reason why the General Assembly may not properly allow them to prevent its sale in their neighborhood or community. It is difficult to see how defendant, in any event, may be injured by any such provision as this when he is charged with selling beer without paying a tax or securing a license. Without reiterating what the court has said before, it may be well to state at this point that in holding that the taxing feature and the definition of beer so enter into the entire act as to become an inseparable part of it, nevertheless, the court does not want to be understood as holding that there are not certain other sections of the statute which are not so interblended and inextricably interwoven as to permit a declaration of their invalidity without in any way affecting the remainder of the act. In other words, the legislative statement in Section 24 declaring each section and part of section to be independent may be and should be given effect in case certain of these sections should be declared invalid. What language may be eliminated it is not necessary for the court here to discuss because in its opinion, as a matter of first impression, the entire act and each section and parts of section are valid enactments. However, the court has only given careful attention to those parts of the act that it deems essential and here pertinent.

It is contended that the declaration of emergency shows that a beer flood would wash over the state borders if the act was not given immediate effect, and that so-called soft drinks have been imported for a number of years without a

declaration of emergency. Where this argument tends is difficult to understand. The General Assembly had the right to declare such an emergency and were impelled no doubt to make the declaration in this case because of their desire to encourage manufacturers of this state and to produce for the state the manufacturers tax that could not be imposed upon those who brewed the product in other states. This is a perfectly appropriate and proper reason for the enactment of the section in question. Counsel argue at great length that this legislation is discriminatory and a denial of the equal protection of the laws. It is unquestionably a taxing measure in which under our Constitution, classification is sanctioned. See also *Alward* v. *Johnson,* 282 U. S. 509; *State* v. *Tax Com'rs.,* 283 U. S. 527; *Lawrence* v. *State Tax Com.,* 286 U. S. 276; *Tax Com'rs* v. *Jackson,* 283 U. S. 527; *Grundling* v. *Chicago,* 177 U. S. 183.

Police regulations are frequently necessary in order that the tax may not be evaded, and this is one of those instances.

The General Assembly in the proper exercise of its powers deemed it necessary to prescribe regulatory measures, which as the court has said before are valid for the reasons given. In doing so, it involves expense to protect the public against abuses that might arise and to insure the collection of the tax. In *Marmet* v. *State,* 45 Ohio St. 63, cited by defendant, the license was upheld on the ground that supervisory power was necessary, which is precisely the situation here. In *Grown* v. *Cleveland,* 125 Ohio St. 455, the court upheld a Cleveland ordinance regulating the sale of corn sugar, requiring a license before anyone should engage in that business. The classification was held to have a reasonable relation to the end desired and was not arbitrary, unreasonable or discriminatory. The court say that the fact that police legislation is confined to certain measures and does not cover the entire field of similar possible abuses does not render the legislation invalid. It is unnecessary here to cite the numerous cases explained in this decision. Suffice it to say that they seem to this court decisive on this point.

The attempt to invoke the right to acquire and possess property and to the equal protection of the laws is answered

by the decisions demonstrating that before one can invoke these constitutional provisions, he must show that he comes within a class that has been affected by their violation, which is not the situation in which defendant finds himself.

However, it is contended that there is nothing unlawful or against public policy in the manufacture or sale of a non-intoxicating beverage that would require it to be singled out by the Legislature for special attention—that 3.2 beer stands on a parity with all other non-intoxicating beverages. The fact that those desiring to sell beers of a greater alcoholic content than that declared by the statute to be non-intoxicating, will simulate in color and container the lawful beverage, is one basis for providing for the regulations; another is that there may be a tendency, where non-intoxicating beer is sold, to offer an intoxicating beer to the public. The whole argument, however, is completely answered by the foregoing decisions holding that it was proper for Congress and for the state to prohibit all malt beverages in order to enforce the prohibition against the sale of intoxicating beverages. The method here adopted is not nearly so drastic and is at least equally effective reasonably to bring about the desired end. To say that there is no ground for taxing one class and not for taxing another is but to argue that the people of this state should not have changed the constitution so as to permit classification for taxation purposes. Moreover, there is no class now being taxed which does not claim that it has been unduly discriminated against. This has been, from time immemorial, the objection to all taxing measures and is best described by the witty Frenchman who said that "the art of taxation is getting the greatest possible amount of feathers from the goose with the least possible amount of squawking." It is said that there is nothing inherently vicious or against public policy in the sale of soft drinks and, therefore, their sale should not be subject to restrictions and limitations. The court has already pointed out the reasons for declining to accept this view. There is here a reasonable basis for the classification. Cases more fully discussing the principles are: *Longbrake* v. *State,* 112 Ohio St. 13; *Capital City Dairy Co.* v. *State,* 183 U. S. 238; *Klap-*

*fer* v. *Board of Health,* 9 N. P. (N. S.) 33; *Dayton* v. *Jacobs,* 120 Ohio St. 225; *State ex rel Downing* v. *Powers,* 125 Ohio St. 108; *Levitt* v. *Cleveland,* 40 Ohio App. 405.

In the case last cited, it was held that ordinances requiring one having a delicatessen license to obtain a near beer license to sell near beer to be consumed on the premises did not violate licensee's constitutional rights, nor was it discriminatory. Reliance is had on: *Yee Bow* v. *Cleveland,* 99 Ohio St. 269; *Koeberle* v. *Akron,* 23 N. P. (N. S.) 267; *Longbrake* v. *State, supra.*

While *Arizona* v. *Childs,* 257 Pac. 366, is not of any pertinency, it may be interesting to note that that is contrary to the following decisions. *State* v. *Wood,* 215 N. W. 487; *State* v. *Foutch,* 295 S. W. 469.

See also: 54 A. L. R. 730, for a long note citing numerous authorities to support the rule that such statutes have not been held discriminatory or class legislation or granting special privileges or immunities. Observe also the note to the case cited by opposing counsel which will be found in 54 A. L. R. 744. It is not of importance to discuss Section 4 of the act authorizing the Commission to adopt and modify regulations for advertising the sale of beer. This is appropriate to prevent improper advertising that might lead to abuses of the law, and even if it were not valid, it would not in any way affect the rest of the act. The Kansas case cited by counsel dealing with the advertising of cigarettes should be compared with *Jell-o* v. *Landes,* 20 Fed. (2d) 120; *Packer Corp.* v. *Utah,* 285 U. S. 105.

In the latter case it was held that a state statute prohibiting tobacco advertising on bill boards, street car signs and placards would not make an arbitrary classification in violation of the Federal Constitution nor would it take the property of the bill board owner without due process of law. It is not on record that the defendant is being prosecuted for violating any regulation regarding the advertising of beer, and over, above and beyond all this is the outstanding fact that *all that the Commisssion is authorized to do is to adopt regulations as to the advertising of beer. This does not mean that it is to prohibit its advertising; it is quite a different thing.* In any event until the regulation is adopted

and someone is affected by it, there is no constitutional question to discuss.

Much stress is laid upon the alleged unconstitutionality of the local option provision in the statute, but it is unnecessary further to consider this for the reason that even if that section were held to be unconstitutional, it would not affect the remainder of the act. As reflecting upon the constitutional objection to such local option laws, the court directs attention to: *State* v. *Ward*, 40 S. W. (2d) 434; *Wampler* v. *LeCompte*, 282 U. S. 172; *Ex Parte Mode*, 180 S. W. 708; *Peterson* v. *Peterson*, 42 Utah 270.

The claim that the Commission is vested with legislative powers because it has the right to define the meaning of certain terms in the act, in no way affects the validity of the act as a whole and, moreover, in the opinion of the court, is not obnoxious to the Constitution. It is purely the delegation of an administrative power, and authority to make administrative rulings is not a delegation of legislative functions. *Green* v. *State Civil Service Com.*, 90 Ohio St. 252; *Miami City* v. *Dayton*, 92 Ohio St. 215; *Akron* v. *Dodson*, 81 Ohio St. 66; *State* v. *Akron Etc. Park Dis.* 120 Ohio St. 464, affirmed 281 U. S. 74; *Moxon* v. *State*, 36 Ohio App. 24.

Finally, it is contended that Article II, Section 16, of the Ohio Constitution is violated in that the act provides: (a) for levying a tax; (b) to provide revenues; (c) to regulate the manufacture and sale of beverages; and (d) to amend Section 6212-14 General Code. Of course, the levying of the tax and the providing of revenues are germane and cognate. The regulatory provision is one of the means of providing for the collection of the tax, and the amendment, of course, cannot be a separate subject because the mere mention of the old statute is not essential, as if it were not directly repealed, it would be impliedly repealed even if there were no reference to it in the new law. This section of the Constitution has been frequently invoked and almost universally held ineffective to nullify legislation. The provision is directory rather than mandatory: *Pim* v. *Nickolson*, 6 *Ohio St.* 176; 10 *Ohio St.* 623; *Seely* v. *Thomas*, 31 Ohio St. 301; *State* v. *Mulhern*, 74 Ohio St. 363; *State ex rel* v. *Braden*, 125 Ohio St. 307, 317.

This opinion has been extended, perhaps, to undue length but this has been due to the fact that the question has not yet been presented in any other court in this state, and hence the court felt constrained to give careful consideration to each point of attack made upon the law.

For the foregoing reasons, the demurrer to the affidavit will be overruled and the defendant ordered placed on trial.