Weygandt, C. J.
The revenue bonds here involved are intended to provide funds for the construction of a turnpike extending in a general easterly and westerly direction across northern Ohio.
For its authority to issue the bonds, the relator relies on the provisions of Section 1201 et seq., General Code.
In his answer the respondent interposes 15 questions of law for consideration by this court.
Perhaps this discussion should be prefaced by the observation that only questions of law are before the court. In other words, the controversy as to whether the construction of a turnpike is wise or unwise is, of course, a matter of legislative policy with which the court is not permitted to concern itself.
Several of the instant questions were presented in the earlier cases of State, ex rel. Kauer, Dir., v. Defenbacher, Dir., 153 Ohio St., 268, 91 N. E. (2d), 512; State, ex rel. Allen, v. Ferguson, Aud., 155 Ohio St., 26, 97 N. E. (2d), 660; and State, ex rel. MacDonald, v. Ferguson, Aud., 155 Ohio St., 46, 97 N. E. (2d), 671.
Obviously the most serious contention of the respondent is that of the unconstitutionality of the so-called Turnpike Act. If these statutes are violative of any provision of the Constitution of Ohio, as insisted, this court has not only the power but the clear duty to so hold. Even in these bewildering and chaotic days, it should be manifest beyond cavil that if the courts were required to recognize and enforce legislative enactments which contravene organic law, a constitution could soon become meaningless.
The relator contends that several of the constitutional issues were not only raised but finally decided in the earlier cases, supra. However, it is urged by *171 the respondent that a determination of those issues in the Allen case, supra, was not necessary for the decision and that hence that part of the pronouncement was obiter dictum.
The writer of the instant opinion shares that view and so indicated in his concurrence in the judgment and in part of the syllabus. But now those issues are squarely before the court and are a necessary part of the decision.
In the syllabus of the Kauer case a majority of the court held in part:
“3. Where the director of a department has been authorized by law to expend money for certain additions and betterments, an appropriation to his department for additions and betterments, without specifying any particular additions or betterments, constitutes, within the meaning of Section 22 of Article II of the Constitution, a specific appropriation of money for those additions and betterments which he had previously been authorized by law to make. * * *
" * * *
“5. Expenditures for the study of a turnpike project, pursuant to Section 1220, General Code, are part of ‘the state’s share of the cost of constructing * * * the state highways of this state,’ within the meaning of those words as found in Section 5541, General Code; and money so expended would, as contemplated by Section 5 of Article XII of the Constitution, be used for the stated object of the tax imposed by Section 5541, General Code.
“6. Money so expended would be ‘expended for * * * costs for construction * * * of public highways and bridges and other statutory highway purposes,’ within the meaning of Section 5a of Article XII of the Constitution. * * *
" * * *
“9. Section 4 of Article VIII of the Constitution *172 does not prohibit the giving or loaning of the state’s credit to or in aid of a public organization created for a public purpose. (State, ex rel. Leaverton, v. Kerns, Aud., 104 Ohio St., 550, approved and followed.)
“10. The Ohio Turnpike Commission is a public organization created for a public purpose.
“11. Within the meaning of Section 1 of Article XIII of the Constitution, a special act, as distinguished from an act of a general nature, is one that is local and temporary in its operation; and the Ohio Turnpike Act is not a special act. ’ ’
In the syllabus in the Allen case, supra, a majority of the court held in part as follows:
‘ ‘ 5. The provision with respect to roads open to the public without charge, found in Section 19 of Article I of the Constitution, applies only to a situation where private property is appropriated without first making compensation to the owner. That section of the Constitution does not limit the power of the General Assembly to provide for the exercise of the right of eminent domain by the taking of private property necessary for the construction or repair of toll roads, except that, in such an instance, provision must be' made for compensation in money to the owner before the taking.
“6. The issuance and sale of bonds, which are payable solely from revenues derived from a turnpike project and which specifically state on their face that they do not constitute a debt of the state or of any political subdivision thereof or a pledge of the faith and credit of the state or of any such political subdivision, do not result in a ‘debt’ of the state within the meaning of Section 3 of Article VIII of the Constitution. (Kasch v. Miller, Supt., 104 Ohio St., 281, and State, ex rel. State Bridge Comm., v. Griffith, Secy. of State, 136 Ohio St., 334, approved and followed.)
*173 “8. Where legislation is of a classification which only authorizes the performance of acts or the authorization of others to perform acts to accomplish a lawful purpose, no delegation of legislative power results merely because broad discretion is conferred upon a party who is given such authority to determine whether or how that authority shall be exercised.
“9. Subject to constitutional limitations, the General Assembly may ordinarily grant to an agency of the state power to do or authorize others to do anything which an individual might lawfully do and which such agency deems necessary to construct, maintain and operate a public project that the state itself would have authority to undertake. In such an instance it is not necessary, in order to avoid a delegation of legislative power, for the General Assembly to specify or define the particular action which may be taken or authorized or to limit such power in any way, other than by relating it to the construction, maintenance and operation of such public project.”
It would extend this opinion unnecessarily to repeat the reasoning on which the foregoing conclusions were based. It is sufficient to state that a majority of the court adheres to those pronouncements.
Likewise, a majority of the court is of the opinion that the numerous remaining claims of the respondent are not of sufficient seriousness to affect the validity of the act. Some of them deserve comment.
In the Kauer case, supra, this court sustained the expenditure of funds by the director of the Department of Highways for a study of the feasibility of a turnpike project. In the Allen and MacDonald cases the court approved the payment of funds due to engineers for services rendered in making such study under contracts with the Director of Highways. Now the respondent contends that the Director of Highways was acting as an agent of the relator Turnpike *174 Commission and that the contracts were in fact contracts of the commission and an unauthorized attempt by the commission to expend funds of the state of Ohio because the commission requested such a study. It would seem to be wholly immaterial who may have suggested such a study as long as the Director of Highways acted within his own discretion and statutory authority. Furthermore, under the provisions of Section 1220, General Code, the commission is authorized to reimburse the Department of Highways for the cost of such a study if made with the commission’s approval.
The respondent complains that the relator commission has not obtained the consent of the municipalities and other political subdivisions through which the turnpike will pass and that this is in violation of the right of municipal home rule conferred by Sections 3 and 7 of Article XVIII of the Constitution of Ohio. However, those powers relate to “local self-government.” The construction of a turnpike across the state hardly can be considered a matter of local self-government.
A further complaint of the respondent is that the turnpike will pass through territory that has been zoned and that this will constitute a use in violation of the zoning ordinances. The answer to this is found in the first paragraph of the syllabus in the decision of this court in the case of Doan v. Cleveland Short Line Ry. Co., 92 Ohio St., 461, 112 N. E., 505, which reads as follows:
“Where an allotter adopts a plan for the improvement of his allotment whereby the use of the lots is restricted exclusively for residence purposes, such restriction cannot be construed as applying to the state or any of its agencies vested with the right of eminent domain in the use of the lots for public purposes.”
This represents the majority rule and was approved *175 and followed in the ease of Norfolk & Western Ry. Co. v. Gale, 119 Ohio St., 110, 162 N. E., 385.
The respondent’s next contention is that in certain communities the presence of the turnpike will have an adverse effect on the value of surrounding property. Sections 1205 and 1206, General Code, make full provision for compensation for all property and rights therein taken for turnpike use. “Full compensation shall be paid for public lands, playgrounds, parks, parkways or reservations so taken” and full cost must be paid for “reconstruction, relocation or removal and any damage incurred in changing the location of any * * * road, highway, railroad or public facility.” Furthermore, in Section 1218, General Code, it is provided:
“All public or private property damaged or destroyed in carrying out the powers granted by this act shall be restored or repaired and placed in its original condition as nearly as practicable or adequate compensation made therefor out of funds provided under the authority of this act.”
But the Constitution contains no provision for consequential damages under such circumstances. In the second paragraph of the syllabus in the case of Smith v. Erie Rd. Co., 134 Ohio St., 135, 16 N. E. (2d), 310, this court held:
“2. When there is no taking altogether or pro tanto, damages consequéntial to the taking of other property in the neighborhood, or to the construction of the improvement, are not recoverable; under such circumstances, loss suffered by the owner is damnum absque injuria.”
Next the respondent contends that when Section 1208 was amended at a special session of the 99th General Assembly, the Governor’s proclamation therefor was unconstitutional. Section 8 of Article III of the Constitution reads:
*176 “The Governor on extraordinary occasions may convene the General Assembly by proclamation and shall state in the proclamation the purpose for which such special session is called, and no other business shall be transacted at such special session except that named in the proclamation, or in a subsequent public proclamation or message to the General Assembly issued by the Governor during said special session, but the General Assembly may provide for the expenses of the session and other matters incidental thereto.”
The questioned statement in the proclamation' is that the extraordinary session was called “for the purpose of considering the enactment of legislation to become effective immediately with respect only to the exercise of the power of eminent domain by the Ohio Turnpike Commission and amending Section 1208 of the General Code so as to permit the Ohio Turnpike Commission to exercise the power of eminent domain within the limits of the provisions contained in the Constitution of Ohio.” The respondent insists that the proclamation was invalid in that it limited the consideration of the General Assembly to the enactment of legislation to become effective immediately with respect only to the exercise of the power of eminent domain by the commission and the amending of Section 1208, General Code, so as to permit the commission to exercise the power of eminent domain within the limits of the provisions contained in the Constitution and thereby imposed an unauthorized limitation on the powers of the General Assembly to enact laws. No unconstitutional limitation is appar ent in the proclamation. As was held by this court in the case of State, ex rel. Ach, v. Braden, 125 Ohio St., 307, 181 N. E., 138, the provisions of Section 8 of Article III of the Constitution are mandatory as to the purpose of the session, and such a limitation is valid if it does not invade the province of the General Assem *177 bly by specifying the method, manner or means by which the purpose is to be accomplished.
The respondent claims, too, that the General Assembly violated the limitation by enacting a provision that ‘ ‘ this act shall apply to all proceedings now pending and those hereafter instituted. ” It is insisted that this was an attempt to validate all previous actions of the commission, many of them relating to things other than the power of eminent domain. However, a study of the context discloses that this provision was intended simply to avoid having the repealed method of appropriation apply to pending proceedings.
The next complaint of the respondent is that the Turnpike Act is invalid because it contains no provision for an appeal from any action of the commission. None is necessary. The commission is an administrative agency without judicial or quasi-judicial power, and if it exceeds its authority or acts arbitrarily, the aggrieved person has recourse to the courts.
Another contention of the respondent is that amended Section 1208, General Code, is unconstitutional on the ground that it is discriminatory in favor of interstate utilities as compared with intrastate and municipal utilities, because it provides for the relocation of the facilities of the former without expense to such utilities but contains no such provision for the benefit of other utilities. That section does contain a provision which mentions interstate utilities, but in Section 1206, General Code, there is a similar provision relating to “public utility facilities” generally and requiring that “the cost of such reconstruction, relocation or removal and any damage incurred in changing location of any such * * public utility facility, shall be ascertained and paid by the commission as a part of the cost of such turnpike project.” Hence, all public utilities are duly protected.
Another complaint of the respondent is that the *178 commission appointed a large committee of private citizens to advise and counsel the commission with reference to the terms of the sale of the bonds and that this constituted an abdication of the commission ?s responsibility. This provides an interesting contrast to the claim of an arbitrary exercise of authority by the commission. In any event it is not contended that the committee acted in other than a merely advisory capacity or that there was any improper purpose in appointing the committee.
The respondent complains, too, that the commission is authorized by the act to police the turnpike and make rules and regulations for its use, and that a violation of such rules and regulations shall be punishable as a misdemeanor. Reasonable rules and regulations would seem to be a practical necessity for the operation of a turnpike. However, the commission has taken no such action and consequently there is nothing tangible before the court. That difficulty can be solved if and when it materializes.
Finally, the respondent contends that the commission has entered into a contract with a title company to perform services that will constitute the practice of law. This, he insists, will involve an unconstitutional use of the funds.of the commission. The title company is not a party to this action, and hence the court, of course, does not assume to adjudicate its rights in its absence. However, the court does hold that the commission may enter into a contract with a title company for the examination and guarantee of land titles provided that such services are limited to those defined by this court in the case of Land Title Abstract & Trust Co. v. Dworken, 129 Ohio St., 23, 193 N. E., 650.
The relator is entitled to a writ of mandamus requiring the respondent, as the secretary-treasurer of *179 the commission, to seal and attest the revenue bonds and the trust agreement securing them.

Writ allowed.

Zimmerman, Stewart, Middleton and Hart, JJ., concur.
Matthias, J., concurs in paragraphs two and three of the syllabus but dissents from paragraph one thereof and from the judgment.
Taft, J., not participating.